UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH J. SMITH, | ) | |
| | ) | No. 12 CV 4546 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| CITY OF CHICAGO and CAPTAIN MARK ALTMAN, | ) ) | |
| | ) | October 11, 2013 |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Joseph Smith claims that Captain Mark Altman—who is employed by the City of Chicago Fire Department—threw him on the ground without provocation, injuring his back. (R. 1, Compl. ¶ 17.) He brought this lawsuit against Altman and the City of Chicago (together, "Defendants") claiming, among other things, excessive force in violation of 42 U.S.C. § 1983 and battery under Illinois law. Discovery is now underway. Before the court is Defendants' Motion to Compel Plaintiff's Expert Deposition Under Reasonable Circumstances for a Reasonable Fee. (R. 66.) For the following reasons, the motion is granted in part and denied in part:

**Background**

Defendants explain that Smith has identified as an expert witness his treating physician, orthopedic surgeon Dr. Patrick Sweeney. They state that Dr. Sweeney will testify about his care of Smith and also provide his opinion regarding the causal connection between Smith's run-in with Altman and his injuries, the future limitations his injuries might cause, and his pain and suffering. (R. 66, Mot.

¶ 3.) Defendants assert that Dr. Sweeney has informed them that he only will submit to being deposed at his office in Mokena, Illinois beginning at 3 p.m. on Fridays. According to Defendants, Dr. Sweeney also informed them that he requires a fee of $1,200 per hour. (Id. ¶ 4.) Defendants state that they offered Dr. Sweeney a fee of $600 per hour, but he declined. (Id. ¶ 5.) Accordingly, they ask this court to compel Dr. Sweeney to sit for his deposition at Defendants' attorneys' office at a time before 12 p.m. and to limit Dr. Sweeney to a reasonable fee, to be determined by the court. (Id. ¶¶ 7, 10.)

In response to the motion, Smith submitted a letter from Dr. Sweeney to support his demand for the $1,200 rate. (R. 69, Resp. Ex. A.) In his letter Dr. Sweeney stated that in 15 years he has never been deposed for the fee Defendants suggested and that the $1,200 rate is necessary to cover the "ongoing overhead" of his practice.[1] (Id.) But because Smith neither disclosed the rate Dr. Sweeney had been paid for other depositions nor provided any evidence regarding the going rate for expert witnesses from Dr. Sweeney's field, this court invited him to supplement his response with additional information. (R. 71, Oct. 4, 2013 Ord.) Dr. Sweeney timely supplemented his initial letter with an affidavit swearing that he has been a doctor for 19 years and that in 2013 he gave 13 depositions at the $1,200 hourly rate. (R. 72, Resp. Ex. A, Sweeney Aff. ¶¶ 3-4.) He also submitted a list including the case numbers, deposition dates, and total amounts he was paid for each of those

---

[1] The court does not find this information about "ongoing overhead" to be helpful to its analysis because his overhead cost will be the same whether Dr. Sweeney sits for his deposition or not.

13 depositions. (Id. Ex. A at 3.) The highest total amount he was paid for a given deposition in 2013 is $2,400. (Id.)

## Analysis

Under Federal Rule of Civil Procedure 26(b)(4)(E), it is mandatory to pay an expert a reasonable fee for time spent responding to discovery "[u]nless manifest injustice would result." Fed. R. Civ. P. 26(b)(4)(E); *Gwin v. American River Trans. Co.*, 482 F.3d 969, 975 (7th Cir. 2007). A finding of "manifest injustice" is rare and the court will exempt a deposing party from paying an expert's fees only in "extreme circumstances." *See Se-Kure Controls, Inc. v. Vanguard Prods. Group, Inc.*, 873 F. Supp. 2d 939, 957 (N.D. Ill. 2012). But the rule requires the party seeking discovery to pay only a "reasonable fee," Fed. R. Civ. P. 26(b)(4)(E)(i), and it is up to the party who is seeking reimbursement of an expert witness's fees to show that those fees are in fact reasonable, *Se-Kure Controls*, 873 F. Supp. 2d at 955.

What constitutes a reasonable fee is a question within the court's sound discretion. *See Edin v. Paul Revere Life Ins. Co.*, 188 F.R.D. 543, 545-46 (D. Ariz. Sept. 24, 1999) (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, Civil 2d, § 2034 at 469-70 (2d ed. 1994)). In determining whether an expert's fees are reasonable, the court considers the following factors:

> (1) the expert's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually being charged to the party that retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

3

*Se-Kure Controls*, 873 F. Supp. 2d at 955. If the party seeking reimbursement puts forth little evidence to support its assertion that the requested fees are reasonable, "the court may use its discretion in setting the reasonable rate." *Id.* (quotation omitted); *see also Profile Prods., LLC v. Soil Mgm't Techs., Inc.*, 155 F. Supp. 2d 880, 886-87 (N.D. Ill. 2001) (readjusting expert's fee from $475 per hour to $250 per hour where party seeking reimbursement provided no evidence to support request under applicable factors).

Smith's response to the motion to compel provides only minimal help to the court in analyzing the relevant factors. The first two factors seem to weigh in his favor because Dr. Sweeney has been practicing medicine since 1994, has specialized expertise as an orthopedic surgeon, and underwent years of education and training to gain that expertise. (R. 72, Resp. Ex. A, Sweeney Aff. ¶ 1.) But the court has no data with respect to what would likely be the most helpful factor: the market rate charged by other seasoned orthopedic surgeons for deposition testimony. *See Jochims v. Isuzu Motors, Ltd.*, 141 F.R.D. 493, 496 n.3 (S.D. Iowa 1992) (characterizing market rate as "a critical" factor in determining the reasonableness of an expert's fee). Nor is there any information in Dr. Sweeney's affidavit supporting his blanket assertion that the treatment he gave Smith was "complex." (R. 72, Resp. Ex. A, Sweeney Aff. ¶ 5.) As for what Dr. Sweeney is charging here compared to what he has charged in the past (factors five and six), he has listed the amounts he was paid for depositions in 2013, but neglected to include any

4

information with respect to earlier cases. Nor has he explained how the complexity of Smith's case compares to the other cases on his list.

Although the parties left the court adrift on the question of what is a reasonable market rate for the expert testimony of an orthopedic surgeon, several recent cases provide at least some level of guidance. In *Maxwell v. Stryker Corp.*, No. 11-cv-01524-REB-KMT, 2012 WL 2319092, at *2 (D. Colo. June 19, 2012), the court rejected an orthopedic surgeon's request for an expert fee rate of $2,000 per hour, noting that if he charged that amount for his time during a typical professional workweek his annual income would be over four million dollars. The court concluded that $750 per hour is a reasonable rate for a treating, board-certified orthopedic surgeon, based on the fees set in similar cases in that district. *Id*. at *2-*3. Other courts have found even $750 to be too high for the expert fee of a treating orthopedic surgeon, setting the rate at $400 instead. *See, e.g, Anderson v. JAS Carriers, Inc.*, No. 1:12-cv-280, 2013 WL 991902, at *2 (S.D. Oh. March 13, 2013); *Broushet v. Target Corp.*, 274 F.R.D. 432, 434 (E.D.N.Y. 2011). In one recent case in which the parties failed to provide the court with market rate information, the court referenced a survey of physician pay showing that, largely because of low Medicare reimbursement rates, the average earned hourly income for orthopedic surgeons is only $88. *See Anderson*, 2013 WL 991902, at *2. Based on that data and the lack of information submitted by the parties, the court concluded that $400 was the reasonable rate for the orthopedic surgeon's discovery deposition. *Id*.

5

Recent cases in which an orthopedic surgeon's expert fee of $1,200 or above was deemed reasonable involve circumstances in which the party seeking to recoup the fee provided the court with at least some information regarding the prevailing market rates. For example, in *Miller v. Credit*, No. 12-00138-BAJ-RLB, 2013 WL 1833310, at *3 (M.D. La. May 1, 2013), the court approved a $1,500 hourly rate after the party designating the orthopedic surgeon as an expert backed its request with evidence of comparable rates charged by other similarly respected and available experts in the field. The court noted that a review of fees charged by seven local physicians for expert deposition testimony supported the finding that $1,500 is reasonable. *Id.* Similarly, in *Grauvogl v. Roby*, No. 2:11-CV-333-WCL-PRC, 2012 WL 4959478, at *2 (N.D. Ind. Oct. 17, 2012), the court approved an hourly rate of $1,500 for an orthopedic surgeon's deposition fee where the party seeking reimbursement provided evidence regarding the rates charged by seven similar treating physicians in the previous 18 months. Smith has not provided any similar information here.

Instead of providing the court with information about the market rate for orthopedic surgeons' expert testimony in this district, Smith rests on Dr. Sweeney's evidence showing that he has commanded and been paid $1,200 per hour 13 times in the past year. But the fact that other litigants have paid Dr. Sweeney that rate does not necessarily translate to a conclusion that his rate is reasonable. *See Marcelli v. Ace Am. Ins. Co.*, No. 10-cv-03025-PAB-KMT, 2012 WL 3744635, at *3 (D. Colo. Aug. 29, 2012) (reducing orthopedic surgeon's expert fee from $1,500 per

hour to $1,000 even though doctor claimed he had charged the higher rate for 10 years and "never even been questioned"). Rather than reflecting a going rate for the expert testimony of orthopedic surgeons, those payments may simply reflect that as a treating physician with first-hand knowledge of a plaintiff's condition, the parties are more or less bound to depose him. In that situation parties are not as free to shop around for an expert who charges fees that are in line with the prevailing market rate. As other courts have pointed out, a treating physician's obligation to provide relevant testimony based on his first-hand knowledge of his patient's condition cuts against the higher fees that witnesses testifying in a purely expert capacity might command. *See Cartrette v. T&J Transport, Inc.*, No. 3:10-cv-277-J-25MCR, 2011 WL 899523, at *1-*2 (M.D. Fla. March 15, 2011); *see also Axelson v. Hartford Ins. Co. of the Midwest*, No. 2:11-cv-01827-RCJ-GWF, 2013 WL 1261757, at *2 (D. Nev. March 26, 2013) (finding $1,500 per hour to be a reasonable rate for an expert orthopedic surgeon, but noting that the rate might be different for "another similarly qualified physician who was being deposed solely in his or her capacity as a treating physician").

Weighing all of these factors, the court finds that Smith has inadequately supported his assertion that $1,200 per hour is a reasonable rate for the proposed deposition testimony. Although Dr. Sweeney apparently has received pay at that rate for short depositions in the past year, recent cases suggest that a reasonable rate for similar testimony is somewhat lower. Bearing in mind the principle that an "expert's fee should not be so high as to impair a party's access to necessary

7

discovery or result in a windfall to the expert," *see Marcelli*, 2012 WL 3744635, at *2, the court determines that the reasonable rate must lie between the amount Dr. Sweeney seeks to recoup and the amount Defendants have offered to pay as Defendants' motion is also unhelpful in support their assertion that $600[2] an hour is reasonable. Accordingly this court concludes that Dr. Sweeney should be compelled to sit for his deposition at a rate of $900 per hour. *See Profile Prods.*, 155 F. Supp. 2d at 886-87 (court exercised discretion to set reasonable expert rate). That figure honors Dr. Sweeney's education and considerable experience and balances the fact that Dr. Sweeney has been paid $1,200 for other depositions against the best information this court has with respect to the actual market rate for the deposition testimony of orthopedic surgeons.

**Conclusion**

For the foregoing reasons, the motion to compel is granted in part and denied in part. It is granted to the extent that Dr. Sweeney is ordered to sit for his deposition at a reasonable rate, which this court determines to be $900 per hour. As set forth in this court's minute order dated October 4, 2013, (R. 71), it is denied to the extent Defendants seek to compel Dr. Sweeney to be deposed before 12 p.m. at Defendants' counsel's Chicago office. Defendants will be permitted to depose Dr. Sweeney at his office in Mokena, Illinois on October 18, 2013 from 3:00 p.m.

---

[2] Defendants assert in their motion that "courts usually set expert fees at $400-$500 per hour." (R. 66, Mot. ¶ 5.) However this conclusory assertion is wholly inadequate to demonstrate that $600 is a reasonable fee for Dr. Sweeney.

8

until 7:00 p.m., and if necessary, again on October 25, 2013 from 3:00 p.m. until 6:00 p.m.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**