# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH P. SMITH | ) |
|     Plaintiff, | ) |
| | ) No. 12 C 4546 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| CAPTAIN MARK ALTMAN, | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Joseph Smith brought suit against Captain Mark Altman and the City of Chicago on a claim of excessive force under 42 U.S.C. § 1983 arising from a water rescue to which both Smith, a Chicago Marine Unit Officer, and Altman, a Chicago Fire Department Captain, responded. After a trial in October 2014, a jury found in favor of Smith and against Altman on the excessive force claim and awarded compensatory damages in the amounts as follows: medical care: $264,330.15; wages: $162,449.00; pain and suffering: $600,000.00; and loss of normal life: $300,000.00. The jury also awarded punitive damages in the amount of $5,000.00 against Altman. Altman now brings a motion for new trial pursuant to Federal Rule of Civil Procedure 59, arguing that exclusion of evidence related to a Fire Department empowering ordinance was an error of law and failure to order a new venire after the Court dismissed two jurors denied him a fair trial. Because the Court did not commit error by excluding evidence of the ordinance and Altman has not shown that he was prejudiced by the jury that heard the case, the motion for new trial [184] is denied.[1]

---

[1] The City of Chicago filed a motion for new trial [186] and a motion for set-off [196]. Those motions are addressed in separate opinions that will issue concurrently.

**LEGAL STANDARD**

The decision to grant a new trial is committed to the Court's discretion. *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 730 (7th Cir. 2013). In deciding whether to grant a new trial, the Court considers "if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014).

To obtain a new trial based on exclusion of evidence, Altman must demonstrate that the court abused its discretion. *See Thompson v. City of Chicago*, 722 F.3d 963, 971 (7th Cir. 2013). "Special deference" is given to the trial court's decisions. *Id.* (internal quotation marks omitted). A court will only order a new trial "if the jury's verdict is against the manifest weight of the evidence, or if for other reasons the trial was not fair to the moving party." *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012) (alteration omitted) (citation omitted) (internal quotation marks omitted). This is a difficult burden for Altman to meet. *See Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 939 (7th Cir. 2001).

Similarly, to receive a new trial based on the Court's decisions during the jury selection process, Altman must show an abuse of discretion that resulted in prejudice to him. *See Griffin v. Bell*, 694 F.3d 817, 821 (7th Cir. 2012). For prejudice, Altman must demonstrate that the juror selection issue "affected the outcome of the trial." *United States v. Osigbade*, 195 F.3d 900, 904–905 (7th Cir. 1999).

**ANALYSIS**

**I.      Exclusion of the Ordinance**

Altman challenges the exclusion of evidence about his ability to issue orders to and arrest individuals at the scene of a fire emergency and the refusal of his Proposed Jury Instruction 29, a

modification of § 2-36-390 of the City of Chicago Municipal Code establishing that authority. Altman argues that a firefighter's authority to order and arrest is not well-known and the failure to inform the jury of the source of this authority prejudiced him because the jury was not able to consider one of the bases of his decision to use force. Smith defends the exclusion of this evidence as irrelevant to the excessive force inquiry and potentially confusing for the jury. Because the refusal of the jury instruction and the limitation of testimony on the source of Altman's authority were not error, Altman's motion on this basis is denied.

### A. Altman's Proposed Jury Instruction 29

During the pre-trial conference, the Court refused Altman's Proposed Jury Instruction 29, a modification of § 2-36-390 of the City of Chicago Municipal Code. The proposed instruction read:

> All persons in the vicinity of an emergency shall be subject to the orders of the chief fire marshal or other member of the fire department in charge of the control thereof; provided, however, that no person not a member of the fire department shall be bound to obey any member of the fire department in charge at such emergency unless such member shall wear an insignia indicating his status or that such status shall be made known to the person charged with obedience of orders. The chief fire marshal or other member of the fire department in charge shall have power to arrest any person refusing to obey lawful orders issued in accordance with this section.

Doc. 135-4 at 40. The Court stated that a jury instruction on this issue would be confusing because this was not a false arrest case. Doc. 185-1 at 3. The Court further noted that, under *Thompson v. City of Chicago*, Altman's actions in conformity with that Code section are irrelevant to an analysis of whether his actions were objectively reasonable for the excessive force inquiry and it would confuse the jury to be specifically instructed on this issue. *See* 472 F.3d 444, 455 (7th Cir. 2006). After hearing argument from Altman's counsel, the Court stated that having this information in an instruction elevated it more than was warranted. Doc. 185-1 at

3

5. The Court then suggested that the parties agree on an evidentiary stipulation about a firefighter's authority to issue orders and make arrests, and said, "I'm not saying that that can't come in. I just don't think that it should be the subject of a jury instruction." *Id.* Altman's counsel and Smith's counsel agreed that they would discuss the possibility of a stipulation. *Id.* at 6. Altman's counsel also proposed bringing this evidence in via the testimony of Police Captain Marc Buslik. *Id.* at 5. It was noted that Agreed Proposed Jury Instruction 20 would inform the jury that a firefighter can use reasonably necessary force in performing his job.[2] *Id.* at 6–7. Ultimately, the Court refused Proposed Jury Instruction 29, but did not make a ruling barring any such evidence and explicitly allowed Altman's counsel to readdress the issue at a later time as needed. *Id.* at 9.

## B. Motions *In Limine* and Trial Rulings Limiting the Scope of Questioning About the Ordinance

### i. Motions *in Limine*

The ordinance and Altman's authority to issue orders and to arrest at the scene were addressed several times in the Parties' motions *in limine*. Smith's motion *in limine* number thirteen sought to preclude Altman from presenting any evidence of any alleged violations by Smith of Chicago Police Department or Chicago Fire Department practices or procedures. In finding that any evidence of Smith's compliance or noncompliance with practices and procedures was not relevant, the Court explained:

> As an initial matter, *Whren v. United States*, 517 U.S. 806 (1996), and *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006) are inapplicable. Evidence of an officer's violation or conformity with police procedures is not relevant to an analysis of whether that officer's actions were objective[ly] reasonable for the excessive force inquiry. *See Thompson*, 472 F.3d at 455. Therefore, evidence of Altman's compliance with Chicago Fire Department procedures would be

---

[2] Agreed Proposed Jury Instruction No. 20, "Definition of 'Unreasonable,'" which was approved as submitted and read to the jury, stated: "In performing his job, a Fire Department officer can use force that is reasonably necessary under the circumstances." Doc. 135-4 at 24.

4

irrelevant. However, here the defendant seeks to admit evidence of Smith's compliance with the Chicago Police Department's, rather than the Chicago Fire Department's, procedures. Such evidence is not precluded by *Thompson*.

Doc. 142 at 6.

In his motion *in limine* number fifteen, Smith sought to exclude evidence that he disobeyed Altman's direct order, arguing that evidence of Altman's authority to issue such an order would require expert testimony and that whether he followed that order is irrelevant to an excessive force inquiry. The Court found that Altman's issuance of an order and Smith's actions in response were directly relevant to the excessive force analysis and would not be excluded. The Court further determined that, although Altman's authority to issue such an order likely would not require expert testimony,

> [T]he Seventh Circuit has determined that police policies and procedures are not relevant to determining the reasonableness of an officer's actions. *See Thompson*, 472 F.3d at 455. Therefore, evidence of Altman's authorization (or not) to use force in a given situation is not relevant and would be unduly prejudicial, as the jury may be distracted from determining the facts of the incident and unduly swayed by an official statement.

*Id.* at 7.

Smith's motion *in limine* number sixteen asked the Court to exclude "evidence or argument regarding the Chicago Fire Department and Chicago Police Department General Orders and Policies as it Relates to the Objective 'Reasonableness' of Defendant's Conduct." *Id.* Altman responded to this motion by stating that he had no intention of introducing evidence that Altman was complying with Fire Department regulations and therefore his actions were constitutionally reasonable. The Court therefore determined that this motion to exclude was moot.

Altman's motion *in limine* number thirteen sought to bar evidence that he was not allowed to use force in performing his job duties. The Court did not have enough information

5

about the specific evidence to be tendered on this subject, and so refused to issue a blanket, pretrial prohibition, but noted that evidence of Altman's authority to use force might run into the *Thompson* prohibition if it was offered as part of the excessive force analysis. Smith responded to this motion by objecting to Altman's Proposed Jury Instruction 29, discussed above. The Court rejected Altman's argument that the ordinance was relevant to the reasonableness of his actions at the scene, and, again relying on *Thompson*, found that his authorization under the ordinance to issue orders had no relevance to the excessive force inquiry and would confuse the jury.

### ii. Trial Rulings

On October 15, 2014, during the trial, Smith's counsel brought the issue of the ordinance to the Court's attention after Altman's counsel informed her that he would seek its admission. Despite the Court's suggestion at the pretrial conference, the parties had not agreed to a stipulation stating that firefighters are authorized to use force to control a scene and are authorized to give orders at a scene. Tr. Trans. 93:10–17. Altman's counsel represented, and Smith's counsel made clear, that a stipulation could not be reached because Smith's counsel disputed the applicability of the ordinance to this situation and required a ruling from the Court. *Id.* 94:19–23, 96:4–101:23. The Court found the ordinance operated as state law, which allowed Altman to act under color of law for federal jurisdictional purposes. *Id.* 102:1–3.

The Court then explained:

What will come in is the ordinance, to the extent that I'm not going to allow in the specific ordinance itself but to establish for the jury that he had arrest powers in that particular scene. That way then the jury understands that he had the power to use force, and the question then becomes: Is it excessive force? Was the force used in this situation reasonable or unreasonable? That is why we're here.

Under *Thompson*, you cannot argue that he acted in conformity with a general order or anything else to show that it was reasonable. That's what *Thompson*

6

says. You can't use the fact that the law authorizes something to prove that it was reasonable. But by the same token, *Thompson* does not state that you can't let the jury know that someone has the authority to use force. So that will be the ruling.

*Id.* 102:4–17. As the context of the Court's comments makes clear, Altman could present evidence that he had arrest powers and the authority to use force, although the Court would not allow presentation of the text of the ordinance itself. When Altman's counsel expressed the concern that if Altman stated that he authority at the scene, he could then be cross-examined on the issue and it might appear that he did not, in fact, have authority, the Court again suggested that the parties craft a stipulation that stated that Altman's had authority to use force to control the scene. *Id.* 102:18–103:8. Smith's counsel resisted such a stipulation in order to preserve objections for appeal. *Id.* 103:9–106:5.

> The Court ultimately held:
>
> Altman can be asked about whether he issued a direct order, and he will say whatever it is that he's going to say. I do not want any argument with him about whether he has that authority by virtue of an ordinance or by virtue of anything else. It will just be a given that he issued the order at the scene. If plaintiffs start challenging him on his authority to issue the order, then the ordinance comes in.

*Id.* 111:2–8. Altman's counsel asked: "So there would be nothing explicitly informing the jury that he has the authority to issue such an order?" *Id.* 111:14–16. And the Court responded:

> He can be asked that it's his understanding, right, that he's permitted to issue an order at the scene. He can be asked about whether he's issued orders previously at scenes. I don't want, you know, a whole line of questioning about that, but you can ask a few questions to establish that, yes, he issued the order, that he's issued orders previously at other rescue scenes, and we're going to leave it at that.

*Id.* 111:17–24. Altman's counsel then asked, "So the source of the authority is out?" *Id.* 111:25. And the Court stated, "The source of the authority is out. The fact that he has authority is in." *Id.* 112:1–2.

Two days later, during the cross-examination of Smith, defense counsel requested and was given leave for a limited line of questioning on Smith's state of mind as to whether he believed that he had to obey Altman's order at the scene. The Court ruled, in relevant part:

> What I don't want to do is get into this sideshow of who has control over the scene. That's what I don't want to do because I don't think that that is relevant and it's going to confuse the jury. However, what he did, what the plaintiff did in response to receiving an order is relevant in terms of what Captain Altman then did or what a reasonable person in Captain Altman's shoes would have done to someone to whom he's given an order three or two times, however many times it is, and the person hasn't responded. That's relevant.
>
> . . . .
>
> I'm going to allow in a limited line of questioning which would go to his state of mind, so not the fact—we're not going to get into litigating this battle about who had authority over the scene, right? It's what he believed at the time. . . . This is what your question is going to be: You did not obey Captain Altman's order to get the fuck back because you didn't think that Captain Altman could give you that order. You're staying away from authority, control of the scene, or anything else. Then he's going to say yes or no.

*Id.* 435:2–10, 445:3–7, 20–25.

### C. The Propriety of the Court's Exclusion of the Ordinance

Altman first argues that the Court erred in excluding the ordinance under *Thompson*. In *Thompson*, the Seventh Circuit affirmed the trial court's exclusion of Chicago Police Department General Orders pertaining to the use of force, finding that such guidelines were not a reliable gauge of the reasonableness of an officer's use of force and therefore were irrelevant to the jury's decision of whether the officer's actions were objectively reasonable under the Fourth Amendment. 472 F.3d at 455. In upholding the exclusion of this evidence, the Court further explained,

> this court has consistently held that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices. In other words, the violation of police

8

> regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established.

*Id.* at 454 (citations omitted) (internal quotation marks omitted). The Court's refusal of Altman's Proposed Jury Instruction 29 restating the municipal ordinance giving certain firefighters arrest powers and the authority to issue orders and control certain scenes was directly in line with *Thompson*, which found a similar guideline to be irrelevant to an excessive force inquiry. *See id.* at 455 ("[W]hether [the officer's] conduct was either good police practice or a violation of Illinois law was immaterial to whether he violated the Fourth Amendment." (second alteration in original) (internal quotation marks omitted)). The exclusion of this jury instruction was not error and the Court will not grant a new trial on this basis.

Altman acknowledges the holding of *Thompson*, but argues that he sought admission of the ordinance to show the fact that Altman had the authority to give orders and make arrests and that Smith was subject to those orders, which was relevant to whether Altman acted reasonably in using force to ensure compliance with his orders. Doc. 185 at 8. This skirts very close to using the ordinance to show that because Altman had authority to arrest and give orders at the scene, his use of force was reasonable. But in any event, the Court did not categorically exclude—either at the pre-trial conference or in the motions *in limine*—any evidence of Altman's authority to give orders and make arrests at the scene. Rather, the Court repeatedly suggested that the parties stipulate to that authority. When such a stipulation was not reached, the Court allowed evidence of Altman and Smith's actions—that Altman gave an order, that he routinely gave such orders at similar scenes, that Smith did not obey that order—and Smith and Altman's state of mind and reactions—that Altman believed he had the authority to issue such orders, that he expected individuals on the scene to obey his orders, and that Smith did not obey Altman because he did not believe he had the authority to issue orders to him. While excluding

9

the source of Altman's authority as irrelevant to the excessive force inquiry, the Court held: "[t]he fact that he has the authority is in." Tr. Trans. 112:1–2. Furthermore, the jury was instructed that a firefighter could use reasonably necessary force in performing his duties. Doc. 135-4 at 24.

Altman argues that the culmination of the Court's rulings placed him in a "no-win" situation in which he was allowed to communicate to the jury only his subjective belief in his own authority, without informing them that he was authorized to give orders and make arrests, that he was authorized to use force to ensure compliance with his orders, and that Smith was subject to those orders. Doc. 185 at 8. Altman argues that this "severely diminished the reasonableness of his subsequent actions" in the jury's mind and made it appear that he did not actually have that authority. *Id.* at 10. Altman argues that although the Court stated, "[t]he source of the authority is out. The fact that he has authority is in," the Court later limited Altman to evidence only of his own subjective belief. Doc. 213 at 3 n.1. That mischaracterizes that particular colloquy. Altman's counsel asked: "Can I ask him if he expects people on the scene to obey his orders?" Tr. Trans. 112:1–2. To which the Court replied:

> The Court: So it would be that he had the authority to issue orders, and I don't know that it's relevant as to whether he expected, that he himself expected other people to follow the orders. . . . But I don't think that what he himself expected other people to do is relevant, and you can argue later that a reasonable officer who issues an order would expect that people follow the order.
>
> Counsel: I think you did say, just to clarify, that it [sic] can say that he believed he had the authority to give such an order.
>
> The Court: Yes.
>
> Counsel: Okay. As far as that goes, that's it.
>
> The Court: Okay.

> Counsel: It's not everything we wanted, but it's fine.

Tr. Trans. 112:18–21, 113:6–17. The Court did not categorically disallow evidence of Altman's authority and did not limit Altman to his subjective belief in that exchange. Rather, it reiterated that evidence of Altman's authority to issue orders was permitted and allowed Altman to testify that he believed he had the authority to give orders at the scene. *Id.* 112:18–19, 113:10–13. Altman's counsel acquiesced to this, answering "it's fine." *Id.* 113:17.

However, even if the Court's ruling excluding the ordinance and evidence of the source of Altman's authority at the scene was error, Altman does not explain how this error was more than harmless. Altman argues only that "[t]here is no question that if the jury had heard that Plaintiff Smith defied a lawful order to remove himself from the water's edge, an order that he was required to obey, they may very well have found Altman's actions to be reasonable." Doc. 185 at 13. However, under *Thompson*, the reasonableness of Altman's action does not hinge on the source of his authority to use force: rather, reasonableness is "not capable of precise definition or mechanical application," but rather requires a jury's "careful attention to the facts and circumstances of each particular case." 472 F.3d at 454. This means that the underlying ordinance, or even a guideline for police use of force, as in *Thompson*, "sheds no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment given the infinite set of disparate circumstances which officers might encounter." *Id.* Altman was not prohibited from introducing evidence of his authority to issue orders, and the jury was instructed specifically that firefighters were allowed to use reasonable force in the course of their duties. Furthermore, Altman presented evidence that he was the senior officer by the water's edge and that he believed Smith was a firefighter and therefore subordinate to him. Tr. Trans., 185:20–25, 232:10–18. Altman also revealed on cross that, in his deposition, Smith testified that he did not

believe he was subject to Altman's authority at the scene. *Id.* 455:7–14. Without more, the Court does not see how this limitation on admission of the ordinance itself prejudiced Altman and will not grant a new trial on this basis.

## II. Denial of Altman's Motion to Dismiss the Jury Venire

Altman argues that the Court also erred by not granting his motion to dismiss the jury and start a new venire when two jurors were excused after the jury was seated. Altman contends that the jury selection became "exceptionally confused" once the two jurors were excused[3] and therefore effectively denied or at least substantially impaired his right to use his peremptory challenges strategically, resulting in an unfair trial. Smith argues that Altman exercised his three peremptory strikes and has not shown any prejudice from the jury that heard the case. The Court agrees.

Jury selection began with the Court seating a twenty-eight person venire. After jurors were excused for cause but before the parties exercised their preemptory challenges, one remaining member of the venire asked to be excused because of a family medical situation. The Court subsequently struck him for cause. Each side then exercised its three peremptory strikes and the Court seated the first twelve of the remaining jurors, dismissing the remaining prospective jurors.

At that point—before the jury was sworn—three of the twelve approached the bench and in sidebar conference with counsel present asked to be excused for family, medical, or work-related responsibilities. The Court excused two of the three. The parties agreed to excuse the first juror after the Court attempted to recall the venire to seat a new twelfth juror after granting each side an additional preemptory strike and learned that all the jurors had left the building.

---

[3] Altman specifically does not argue that the Court's jury selection process was in error; rather, his argument is directed to the immediate aftermath of the recusal of the two jurors at the end. *See* Doc. 213 at 7.

The second juror's medical issue was something the Court agreed to accommodate within a normal trial schedule, so that juror remained. When the third juror asked to be excused for work-related reasons, Altman requested a new venire, asserting that "we feel that given the after-the-fact alteration of the jury pool that we'd be prejudiced because we would have done things differently in terms of our picks." Doc. 185-6 at 21. Smith objected to restarting the jury selection process and suggested that the Court just dismiss the juror. The Court dismissed the third juror for cause and swore in the ten-person jury.

As an initial matter, Smith asserts that Altman did not object to the use of his peremptory strikes during the jury selection process and therefore this issue is waived. Altman did move to dismiss the jury venire based on concerns about prejudice at the time of jury selection, therefore he has not waived this argument. *Cf. Deppe v. Tripp*, 863 F.2d 1356, 1363 (7th Cir. 1988) (counsel did not object during closing argument and therefore had not preserved issue); *Chestnut v. Hall*, 284 F.3d 816, 819 (7th Cir. 2002) (failure to object to jury instruction waived issue).

Parties to a civil jury trial have the right to a jury of no less than six members. *Colgrove v. Battin*, 413 U.S. 149, 160, 93 S. Ct. 2448, 37 L. Ed. 2d 522 (1973). And in a federal civil jury trial, each side is entitled to three peremptory challenges per 28 U.S.C. § 1870. Peremptory challenges have a "long recognized" role "in reinforcing a defendant's right to trial by an impartial jury." *United States v. Martinez-Salazar*, 528 U.S. 304, 311, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000). But as the Supreme Court explained: "we have long recognized, as well, that such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension." *Id.*

Altman, like Smith, exercised his peremptory strikes against the entire remaining jury venire after the few individuals were excused for cause. Altman had the opportunity to exercise

a strike against every one of the ten jurors who were eventually seated. Furthermore, Altman does not object to the Court's dismissal of the two jurors for cause—indeed, Altman agreed to the first dismissal. Rather, he claims that their removal after the jury was seated meant that he was denied the ability to "effectively and knowingly exercise" his peremptory challenges. Doc. 213 at p. 6. Altman does not elaborate about how he would have exercised his strikes differently had these two jurors been excused for cause before the peremptory challenges started. Indeed, this argument is highly speculative and without more, it is impossible to understand how Altman contends he has been prejudiced. *See United States v. Patterson*, 215 F.3d 776, 782 (7th Cir. 2000) ("Peremptory challenges enable defendants to feel more comfortable with the jury that is to determine their fate, but increasing litigants' comfort level is only one goal among many, and reduced peace of mind is a bad reason to retry complex cases decided by impartial juries."), *rev'd on other grounds*, 531 U.S. 1033, 121 S. Ct. 621, 148 L. Ed 2d 531 (2000).

Altman states the prejudice to him from the removal of these jurors meant "that the remaining jurors had a disproportionately greater influence than they would have otherwise had under the circumstances known to Defendant Altman when he exercised his peremptory challenges." Doc. 185 at 15. This is not evidence or even an argument that these jurors were biased—indeed in reply Altman concedes that he has not identified a biased juror. Rather the argument that a juror's influence grows the fewer jurors are seated is an argument against a less-than twelve-person jury, not a reason that this particular jury was biased. Altman had no right to a twelve-person jury. *See Colgrove*, 413 U.S. at 160. And he received a ten-person jury that has not been accused of specific bias or prejudice—this is not enough for a finding that the outcome of the trial was affected and the verdict should be reversed. *See Jimenez v. City of Chicago*, 732 F.3d 710, 715–16 (7th Cir. 2013) ("[A] possible error in administering peremptory challenges

14

that did not deny an impartial jury does not warrant a new trial."); *Patterson*, 215 F.3d at 782 ("When the jury that actually sits is impartial, as this one was, the defendant has enjoyed the *substantial* right."); *see also Griffin*, 694 F.3d at 821 ("Our focus at this stage must be on the impartiality of the jury that actually sat, not on the juror who was struck." (alterations omitted) (internal quotation marks omitted)); *Osigbade*, 195 F.3d at 905 ("The defendant does not argue prejudice in his brief, and such an omission is understandable. There is simply nothing in the record to indicate that the trial would have been different had Ms. Richardson been a member of the petit jury, nor is there anything to indicate that Ms. Lewis's presence on the jury was adverse to the defendant.").

Altman argues that this "exceptionally confusing" jury process meant that he was not able to weed out potentially biased jurors or ones with extreme views. However, Altman had the opportunity to exercise his peremptory strikes against the entire jury pool remaining after the for-cause strikes and Altman could have stricken any of the ten jurors who eventually sat if he suspected one or another of bias. He did not. Altman argues this jury selection process was even more confused than that of *United State v. Harbin* where the district court allowed the government to exercise a "saved" peremptory challenge in the middle of a criminal trial. 250 F.3d 532 (7th Cir. 2001) (vacating and remanding for new trial). The Seventh Circuit described those circumstances as "unprecedented" and determined that was not a fair trial because "a shift in the balance of peremptory challenges favoring the prosecution over the defendant can raise due process concerns." *Id.* at 537, 541. No such concerns that one side "unilaterally alter[ed] the composition of the jury mid-trial" are in evidence here. *See id.* at 542. Two jurors were struck for cause after the jury was seated but before it was sworn. Ten jurors, none of whom Altman can accuse of bias or prejudice and all of whom he could have struck, were seated in a

15

civil trial. Altman has not shown the jury selection process affecting the outcome of his trial. His motion for a new trial on this basis is denied.

## CONCLUSION

For the foregoing reasons, Altman's motion for a new trial [184] is denied.

Dated: July 14, 2015

SARA L. ELLIS
United States District Judge