# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH P. SMITH, <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>CAPTAIN MARK ALTMAN, <br><br>　　　　Defendant. | No. 12 C 4546 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

After a trial in October 2014, the jury returned a verdict in favor of Plaintiff Joseph P. Smith and against Defendant Captain Mark Altman on Smith's claim of excessive force under 42 U.S.C. § 1983. The jury awarded Smith a total of $1,326,779.15 in compensatory damages, which included $600,000.00 for pain and suffering, $300,000.00 for loss of normal life, and $264,330.15 for medical care. Punitive damages in the amount of $5,000.00 were also awarded against Altman. By separate Opinion and Order to be issued concurrently with this one, the Court has determined that the City is entitled to a set-off of the medical care award in the amount of $264,330.15.

The Court had ruled pre-trial that the City of Chicago ("City") was a nominal defendant. The City did not attend the trial. On November 26, 2014, the City filed a Rule 59 Motion for New Trial or, in the Alternative, for Remittitur [186], arguing that Smith's counsel violated pretrial rulings in closing argument, which misled the jury and resulted in an excessive compensatory damages award. The City also argues that the damages award is against the clear weight of the evidence and therefore a new trial on damages or remittitur is required. Smith filed a response and also moved to strike the motion *in toto* because the City was a nominal defendant

that did not participate at trial. For the following reasons, Smith's Motion to Strike [189] is denied. The City's Motion for New Trial or in the Alternative for Remittitur [186] is granted in part and denied in part. The City's motion for new trial is denied. The Court grants the City's alternative request for a remittitur of the compensatory damages award, however, and remits the jury's verdict to $656,779.15.[1]

## ANALYSIS

### I. Smith's Motion to Strike & the City's Motion for New Trial

Smith moves to strike the City's motion for new trial or remittitur on the basis that the City is a nominal defendant and therefore has no standing to object to the trial proceedings. Smith further argues that the City has waived any potential objections because it made no such objections at trial. The City argues that although it is a nominal defendant, it had a substantive interest in the damages portion of the case and should therefore be allowed to move for a new trial. The City requests a new trial on the grounds that Smith, in closing argument, mislead the jury into believing that he paid the portion of stipulated medical bills not paid by the City and claimed future medical expenses as part of the "loss of normal life" category of compensatory damages without having presented any evidence on this point. The City further argues that this inflated amount was then tripled by the jury for the "pain and suffering" award.

At a May 8, 2014 hearing, the City introduced itself as no longer a party to the case and admitted it would indemnify Altman and that Altman was acting in the scope of his employment during the incident. At that hearing, the Court explained to Smith's counsel, "[w]hat this means is that [the City's] not in the case substantively, so they are only there for indemnification. . . . They're not going to be participating as a defendant in the case. . . . They're here solely for

---

[1] The City has also filed a motion for set-off of certain amounts from the compensatory damages award [196]. The total remitted jury verdict of $656,779.15 discussed in this motion does not reflect the set-off amounts. Those amounts are discussed in a separate Opinion and Order that is issued concurrently.

2

indemnification purposes. They will not be at counsel table, there will just be counsel for Defendant Altman." Doc. 189-2 at 6, 10. Counsel for the City also appeared at the pre-trial conference, where counsel introduced himself on behalf of "the nominal defendant, City of Chicago" and argued for a set-off hearing post-trial, which was granted on the basis that the City was still a defendant in that it was "dismissed to the extent that they don't need to be at trial," but "they're the ones that are ultimately paying. . . . They're entitled to a setoff." Doc. 186-1 at 3–4. Counsel for the City then participated in pre-trial conference discussions about a possible stipulation to the amount of Smith's medical bills, then excused himself. *Id.* at 4–25. The parties and the Court understood that the City was a nominal defendant in the sense that, although not technically dismissed from the case, it was in place for indemnification purposes only and would not participate at trial. The City itself proposed this posture and made no effort to correct the Court or participate in the trial during the May 2014 hearing, the pre-trial conference, or the trial itself.

Smith first argues that the City is a nominal defendant and therefore has no standing to bring this new trial motion. Smith cites several Seventh Circuit cases that define "nominal defendant" as a party brought into a case as the keeper of the funds in dispute—i.e. the "depositary"—that has "no interest in the property that is the subject of the litigation." *See SEC v. Cherif*, 933 F.2d 403, 414 n.13 (7th Cir. 1991). Nominal parties have also been described (in the remand context) as "a party without a real interest in the subject matter being litigated [that] can be joined merely as a means of facilitating collection of the disputed subject matter." *Legal Helpers Debt Resolution, LLC v. Global Client Solutions,* No. 12-CV-03055, 2012 WL 3017886, at *2 (N.D. Ill. July 23, 2012). The City argues that the concept of a nominal defendant is not a bright line test, but rather a balancing test examining whether the party has an interest in the

3

particular litigation. The City argues that it has a clear interest in the litigation, citing the indemnification and respondeat superior claims pleaded against it, its agreement to indemnify Altman for any compensatory damages award, and its ownership interest in the funds to be used for that award. The City also cites its participation as a party in the case by answering the complaint, including asserting an affirmative defense of set-off on which it was granted a post-trial evidentiary hearing, and responding to discovery.

The City agreed that it would not participate at trial, then requested and was granted a post-trial set-off hearing to assert its rights. Although the City has an interest in the damages award (because it will eventually be on the hook to pay that award), because it did not participate in the trial, it cannot now complain about stipulations and closing arguments to which an objection should have been made at the time. Whether or not the City is a "nominal defendant" under the Seventh Circuit case law cited by the parties to the Court, it has certainly waived any new trial arguments based on evidentiary objections. The proper party to bring such a motion would have been Altman himself, who did not preserve these objections at trial and has therefore waived them.[2] *See Deppe v. Tripp*, 863 F.2d 1356, 1363 (7th Cir. 1988) (the failure to object at trial waived appellate review of challenge to closing argument).

The City argues that "the handling of the damages sector of the trial was determined" at the pre-trial conference that it attended, and that meant "only the liability-related issues remain[ed], thereby leading the City to believe that it had, in fact, preserved such rights and privileges regarding all damages aspects of the trial in this case." Doc. 210 at 6. However, the pre-trial conference did not settle all aspects of the presentation of damages evidence. On the contrary, despite the Court's urging, counsel could not come to an agreement on the total amount

---

[2] Altman brought his own motion for new trial [184] based on other objections, which is addressed in a separate opinion.

4

of medical bills or lost wages at that conference and were strongly encouraged by the Court to create stipulations to present those issues to the jury. The City further argues that it did not tender its defense to Altman's counsel and therefore has not waived any right to object to aspects of the handling of damages at trial. But the City styled itself a nominal defendant and did not attend trial. It was clear from the pre-trial conference that many aspects of the damages portion of the trial were uncertain and disputed. The City has waived these arguments and cannot come in at this late date with evidentiary objections.

The Court denies the City's Motion for New Trial. Smith's Motion to Strike is also denied, because the City's Alternative Motion for Remittitur, as discussed below, is well-taken.

## II.     The City's Motion for Remittitur

In the alternative, the City asks the Court to remit the compensatory damages award, arguing that the jury's award is not rationally connected to the evidence and is not comparable to awards in similar cases. Even if the City has waived its evidentiary arguments for new trial, the Court may consider the question of remittitur *sua sponte*. *See Superbird Farms, Inc. v. Perdue Farms, Inc.*, 970 F.2d 238, 247 (7th Cir. 1992) (reviewing district judge's grant of remittitur on its own motion), *overruled on other grounds by Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1397 (7th Cir. 1997).

Compensatory damages serve to make the plaintiff whole—i.e. "to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *Garcia v. City of Chicago*, No. 01 C 8945, 2003 WL 22175622, at *3 (N.D. Ill. Sept. 19, 2003) (quoting *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001)). A jury's verdict is entitled to deference. *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 566 (7th Cir. 2006). However, when deciding whether to remit a jury

verdict, the district court may consider whether that verdict is "monstrously excessive," if there is no rational connection between the verdict and the evidence presented at trial, and whether the award is roughly comparable to awards in similar cases. *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 408 (7th Cir. 2010). The Seventh Circuit has advised courts to consider the "monstrously excessive" inquiry as "another way of asking whether there is a rational connection between the award and the evidence." *O'Sullivan v. City of Chicago*, 474 F. Supp. 2d 971, 982 (N.D. Ill. 2007) (citing *Deloughery v. City of Chicago*, 422 F.3d 611, 619 n.4 (7th Cir. 2005)).

Based on a review of the evidence and when considered against other, similar cases, the jury's award of $600,000.00 for pain and suffering and $300,000.00 for loss of normal life are excessive, lack a rational basis in the damages evidence presented, and are not in line with awards in comparable cases.

### A. Trial Evidence

The evidence presented by Smith, including Smith's own testimony and that of his treating physician, Dr. Sweeney, does not support an award of this magnitude for pain and suffering and loss of normal life. Pain and suffering, as defined by the jury instructions read at trial, comprised both physical and "mental/emotional pain and suffering." Doc. 165 at 27. Loss of normal life was described as "disability/loss of a normal life" in the jury instructions. *Id.* Loss of normal life means "the temporary or permanent diminished ability to enjoy life . . . [and] includes a person's inability to pursue the pleasurable aspects of life." *Ocampo v. Paper Converting Mach. Co.*, No. 02 C 4054, 2005 WL 2007144, at *7 (N.D. Ill. Aug. 12, 2005). Both of these damages awards have physical and emotional suffering components, therefore the Court will review the evidence presented by Smith on both aspects.

The Court will first review the evidence of physical pain and suffering. Prior to the incident with Altman, Smith was in excellent athletic conditioning and worked as a marine diver, a physically demanding job. Dr. Sweeney testified that Smith had preexisting conditions, including degenerated discs and arthritic joints, that were asymptomatic prior to, but exacerbated by, the incident. Smith had severe pain after the incident which caused him to seek help at the emergency room on two separate occasions. Smith then consulted an orthopedic surgeon, Dr. Sweeney. Smith also saw a pain specialist, who attempted unsuccessfully to treat him with epidural steroid injections. Dr. Sweeney performed two operations on him, the second a spinal fusion. Smith underwent a year of physical therapy before the spinal fusion and wore a neck brace for a period of over six months. Smith has worn a back brace since the February 2013 spinal fusion surgery. Before the second surgery, Smith had numbness in his legs that made it difficult for him to stand at times. That surgery improved the pain. Smith also testified that his pain has diminished over the years since the accident. Dr. Sweeney has recommended another neck fusion for Smith because Smith had recently complained of tingling in his fingers and neck and pain in his shoulder, low back, groin, and some numbness in his legs. Treatments have improved those complaints partially. Smith has elected not to have that surgery at this time. Dr. Sweeney testified that Smith will have on-going pain that will limit him from many of his prior activities. After the incident, Smith developed sacroiliac joint syndrome either from the incident or the spinal fusion surgery.

The City's expert, Dr. Kessler, testified that Smith's injuries from the incident were relatively minor and should only have required limited physical therapy and physician visits. She further testified that Smith's complaints of pain and numbness were likely symptoms of a degenerative condition that was long-standing and could not have occurred as a result of the

7

incident. She testified that this condition was not exacerbated by the incident. Dr. Kessler also opined that Smith's symptoms could not have been caused by the diagnosis given by Dr. Sweeney and that the pain reported could not have been linked to the portions of the neck and back Dr. Sweeney targeted for the surgeries.

As for proof of emotional damages, Smith testified that he is no longer able to work as a marine diver, which is his dream job. His doctor has recommended that he be assigned a desk job once he can meet the physical entrance exam requirements and be cleared for duty. Smith is working hard in physical therapy to get to that point. The incident affected his relationship with his children, because he is not able to be as active a father as he once was—for instance, he is not able to attend all his children's musical performances. Smith testified that he feels the incident was wrong and that he was miserable for the first year after the accident.

When considering remittitur, this Court must give deference to the jury's determination of damages, however it must also consider whether the award has a rational basis in the evidence. *See Spina v. Forest Pres. Dist. of Cook County*, 207 F. Supp. 2d 764, 771 (N.D. Ill. 2002). The jury could find, based on Smith's own and Dr. Sweeney's testimony, that Smith had a great deal of pain after the incident and, despite over three years of medical intervention, continues to suffer from pain. Further, Smith wears a back brace, continues to have some numbness, and has sacroiliac joint syndrome. Smith is working to return to the police force but will almost certainly be confined to a desk job. Smith testified to the effect of the incident on his emotional and family life in that first year after the event, and that he can no longer be as active a participant in his children's lives as he would like.

Smith undoubtedly continues to have pain and some limitations in his level of activity. His family life has been affected by his medical condition. He will not be able to return to

marine diving, although he will hopefully return to the Police Department in some capacity. The trial evidence does not, however, support an award of $600,000 for pain and suffering. *See Garcia*, 2003 WL 22175622, at *4 (limited evidence of physical and emotional injuries warranted remittitur of $1,000,000 compensatory damages award); *Reising v. United States*, 60 F.3d 1241, 1244 (7th Cir. 1995) ($150,000 award for pain and suffering after back injury). Indeed, in terms of emotional damages, another court noted that, "[i]n only a few cases within the Seventh Circuit have courts upheld jury verdicts of more than $50.000.00 for emotional damages" and that "special circumstances," including threat of on-going physical injury, was required for six-figure emotional damages awards. *See Spina*, 207 F. Supp. 2d at 773–74 (reviewing cases). Furthermore, $300,000 for loss of normal life is wildly excessive considering the limited evidence presented—Smith did not present evidence of permanent disability beyond his continued pain and the continued use of a back brace. He further gave no testimony about an inability to enjoy life besides some limitations on his ability to attend his children's extracurricular functions. *Cf. Ocampo*, 2005 WL 2007144, at *7 (evidence of plaintiff's nightmares, post-traumatic stress, depression, and avoidance of public places supported $1,000,000 loss of normal life award). Although the Court acknowledges the difficulty in quantifying these kinds of damages, the amounts awarded by the jury bear little relationship to the evidence presented at trial.

Finally, the jury is entitled to credit the testimony of Dr. Sweeney over Dr. Kessler as to the source of Smith's pain and the proper course of treatment. But beyond the lack of rational evidence to support such an out-of-proportion pain and suffering award, the Court believes that the jury likely increased the size of this award out of a desire to compensate Smith for the ineffective and possibly destructive medical treatment he received from Dr. Sweeney after the

9

incident. This is an irrational, improper basis for inflating the verdict. *See Garcia*, 2003 WL 22175622, at *4 (remitting award "born of passion and prejudice" because it was based, in part, on the jury's likely desire to punish the police department for other offenses, not to compensate the victim for his injuries).

      **B.**      **Comparative Cases**

The Court may also consider awards in similar cases as a reference point in assessing reasonableness. *See Adams v. City of Chicago*, --- F.3d ----, 2015 WL 4863526, at *5 (7th Cir. 2015). A review of awards in this and other circuits shows that the range for pain and suffering in similar cases is between $80,000 and $150,000. These cases also involve back injuries, multiple surgeries, and continuing pain, yet courts remit $500,000 and $600,000 pain and suffering awards. While the Seventh Circuit has recently reminded district courts that "[t]here must be room for a jury's award to exceed the relevant range of cases when facts warrant," as discussed above, Smith did not present proof of damages sufficient to support the $600,000 award. *See id.*

For example, in a case very similar to this one, plaintiff suffered head injuries in an automobile accident that he asserted aggravated or accelerated pre-existing back problems. *Reising*, 60 F.3d at 1242. After multiple surgeries, the plaintiff continued to live with significant pain and this affected his ability to work at his former profession. *Id.* The Seventh Circuit upheld a $150,000 award to the plaintiff for his increased suffering as a result of the accident. *Id.* at 1244. Similarly, the Seventh Circuit remitted an award of almost $300,000 to $138,204.39 in a case where the plaintiff suffered several fractured vertebrae, required one surgery, was in pain and could not walk normally or climb stairs for six months after the surgery, and whose doctor may recommend an additional spinal surgery. *Abernathy v. Superior Hardwoods, Inc.*,

704 F.2d 963, 973 (7th Cir. 1983). Other federal and state cases support this range of up to around $150,000 for pain and suffering resulting from back injury with continuing pain. *See Ferrero v. United States*, 603 F.2d 510, 515 (5th Cir. 1979) (reducing $650,000 award to $375,000 for a fifty-three year old female, an avid sports participant, who was severely and painfully injured, but recovered with permanent partial disability, some pain, and loss of enjoyment of life; reducing $650,000 award to $150,000 for twenty-four year old seriously and painfully injured, who recovered but had continued pain); *Evans v. City of N.Y.*, 613 N.Y.S.2d 712, 713 (N.Y. App. Div. 1994) (reducing $600,000.00 past and future pain and suffering award for back injury to $90,000.00); *Coleman v. State*, 353 So. 2d 249, 253 (La. Ct. App. 1988) (reducing $500,000 award for neck injury to $80,000). The Court notes, however, that these cases are all ten years old or older, therefore $150,000 is likely low taking into account economic and inflationary changes.

Smith presents state court cases from Illinois and other states to support his argument that $600,000 in pain and suffering is reasonable. *See Spina*, 207 F. Supp. 2d at 773 ("Plaintiff correctly notes that this Court is not limited to considering damages awarded within the Seventh Circuit, or even to considering only those awards that have been specifically challenged as excessive."). However, Smith's examples involve more extreme damages than those proven at trial here. *See Dewart v. City of Chicago*, 2013 Jury Verdicts LEXIS 10654 (Sept. 20, 2013) ($850,000 pain and suffering award to plaintiff hit by a truck who suffered four fractured vertebra, a broken right leg requiring a metal rod, a six-day initial hospital stay, a torso brace, physical therapy, and a follow-up surgery); *Doss v. Luken*, 1999 Nat. Jury Verdicts Review LEXIS 2828 (Sept. 8, 1999) ($1,950,000 pain and suffering award to plaintiff whose neurosurgeon negligently removed two vertebra, leading to a second surgery to remove two

11

additional vertebra, and leaving the plaintiff with a permanent restriction on bending, stooping, and lifting over five pounds, and permanent bowel and bladder urgency); *Gaston v. City of Springfield*, 2006 Jury Verdicts LEXIS 48469 (Mar. 1, 2006) ($3,000,000 pain and suffering award to plaintiff left quadriplegic after back injury from car accident); *Fontneau v. Champagne*, 1995 Nat. Jury Verdict Review LEXIS 762 (Sept. 11, 1995) ($750,000 pain and suffering award to plaintiff who reported "excruciating pain," could not walk, and was rushed to the emergency room, suffering 10% permanent partial disability of the lumbar spine and herniated disc after negligent chiropractic sessions); *Allen v. D.C. Water & Sewer Auth.*, 2009 DC Metro Verdicts Monthly LEXIS 644 (Mar. 4, 2009) ($611,238 award to plaintiff who suffered inoperable disc herniation in automobile accident during funeral procession; case settled for a reduced amount pending motion for remittitur). The one federal case presented by Smith, *McGregor v. Harrah's Ill. Corp.*, 2001 Jury Verdicts LEXIS 47290 (Mar. 12, 2001), is not comparable because it was brought under the Federal Employers Liability Act, which the Seventh Circuit has explained often results in very large jury awards. *See Frazier v. Norfolk v. W. Ry. Co.*, 996 F.2d 922, 926 (7th Cir. 1993) ($2.3 million jury award did not "shock[] our judicial conscience" because "[l]arge FELA jury verdicts in state and federal court are not uncommon").

The Court finds that the cases presented by the City establishing a rough upper limit of $150,000 in pain and suffering for back injuries are the most comparable, if somewhat dated. Considering these, the jury's award of $600,000 is shockingly large.

## CONCLUSION

For the foregoing reasons, Smith's Motion to Strike [189] is denied. The City's Motion for New Trial [186] is denied. The City's Alternative Motion for Remittitur [186] is granted. The Court finds that a reasonable award in this case is $200,000 for pain and suffering and

12

$30,000 for loss of normal life.  The Court orders Smith to consent to a $670,000 remittitur of the $1,326,779.15 compensatory damages jury verdict, resulting in a compensatory damages award of $656,779.15 before the set-off discussed in the Court's separate Opinion and Order, or to consent to a new trial on the issue of compensatory damages.  Smith may file with the Clerk of the Court an acceptance of the remittitur to $656,779.15 on or before October 6, 2015.  If Smith consents to the remittitur, an Amended Judgment in the amount of $392,449.00 will issue.  In the event Smith does not file an acceptance of the remittitur on or before October 6, 2015, a new trial on Smith's compensatory damages only (Altman's liability having been established) will commence on a date to be set at the next status hearing on October 13, 2015.

Dated: September 21, 2015

SARA L. ELLIS
United States District Judge