# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH P. SMITH | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 4546 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| CAPTAIN MARK ALTMAN, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

After a trial in October 2014, a jury found in favor of Plaintiff Joseph Smith and against Defendant Captain Mark Altman on a 42 U.S.C. § 1983 excessive force claim and awarded compensatory damages in the amounts as follows: medical care, $264,330.15; wages. $162,449.00; pain and suffering, $600,000.00; and loss of normal life, $300,000.00. The jury also awarded punitive damages in the amount of $5,000.00 against Altman. The City of Chicago ("City") moves this Court for set-offs from the compensatory damages award and for the creation of an escrow account to hold Smith's recovery to facilitate the City's recoupment of future medical expenses. For the reasons explained below, the City's motion [196] is granted in part and denied in part.

## LEGAL STANDARD

The request for set-off from a jury verdict is generally styled as a Rule 59(e) motion to alter or amend the judgment. *See Fox ex rel. Fox v. Barnes*, No. 09 C 5453, 2013 WL 2111816, at *2 (N.D. Ill. May 15, 2013) (citing *Zivitz v. Greenberg*, 279 F.3d 536, 539 (7th Cir. 2002)). Set-off is "a procedural device for adjusting a verdict to avoid a windfall to the plaintiff." *Id.* at *3.

Without any discussion of choice of law, the parties cite Illinois cases in their arguments about the requested set-offs and the Court agrees that Illinois damages law applies on this question. *See id.* at *3–4 (discussing the choice of appropriate damages law in § 1983 cases, using the most analogous Illinois state law).

**ANALYSIS**

**I.     Procedural Background**

As recognized by all the parties, this case is unusual in multiple respects, most relevant for this motion being that: both the Plaintiff, Smith, and the individual Defendant, Captain Mark Altman, are City of Chicago employees; the City of Chicago is a nominal defendant who has agreed to indemnify Altman for any compensatory damages awarded; and the City has paid Smith's medical bills and some wages after the injury-on-duty that precipitated this lawsuit. In addition, and as discussed below, the City has asserted subrogation rights against Smith under the terms of his employment. Therefore, to the extent Smith must reimburse the City for his medical expenses, the City will be paying him under this judgment and then seeking to collect that money right back. Because of this posture, the collateral source rule featured prominently in the motions *in limine*. In its pre-trial rulings, the Court found that the collateral source rule did not apply to exclude evidence of the City's payment of Smith's medical bills, on the reasoning that the City was not a source wholly independent from and collateral to the tortfeasor (it was the nominal defendant-employer and agreed indemnitor) and having paid those expenses once, the City should not be required to pay them twice. *See* Doc. 142 at 2 (citing *Wilson v. Hoffman Grp., Inc.*, 546 N.E.2d 524, 530, 131 Ill. 2d 308, 137 Ill. Dec. 579 (1989), *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986)).

On September 24, 2014, at the pre-trial conference, the City sought and was granted a post-trial evidentiary hearing, if warranted, on its set-off affirmative defense. By way of explanation, at the pre-trial conference the Court stated:

> As for plaintiff's argument that the city is no longer a defendant, . . . they are a defendant. They are here to indemnify the individual defendant. So they were dismissed to the extent that they don't need to be at trial. They don't need to sit at counsel table but, you know, they're the ones that are ultimately paying. So they are entitled to bring this motion. They're entitled to a setoff, and we'll see what happens.

Doc. 196-14 at 4. The Court has already determined that the City may bring this set-off motion. After the jury's verdict for Smith, an evidentiary hearing on set-off was held on November 18, 2014.

## II. Requested Set-Offs: The $264,300.15 Jury Award for Medical Care & $83,384.62 of the Lost Wages Award

### A. Request to Deduct $150,666.61 from the Medical Care Award

The City initially asks the Court to deduct $150,666.61 from the $264,330.15 medical care award, arguing that the City already paid this amount under its obligation to cover medical expenses for injuries on duty. At trial, Smith and Altman entered into a stipulation regarding Smith's medical bills and the amount of those bills that the City had already paid. Smith argues that the jury verdict clearly shows that the amount the City paid has already been subtracted from the total medical expenses and therefore there is no double recovery. The Court agrees.

At trial, Smith and Altman submitted a stipulation to the jury that stated, in full:

The parties agree that the total amount of Plaintiff Joseph Smith's medical bills in this case are $414,996.76, and that the City of Chicago has paid $150,666.61 of those medical bills.

The parties agree that the total amount of lost wages that Plaintiff has incurred from November 2, 2011 to the present time are $247,205.00, and that the City of Chicago has paid $84,756.00 for one year of those lost wages.

You are to consider the stipulation for purposes of damages only, not for liability. Doc. 165 at 5. The jury awarded damages in the amount of $264,330.15 for medical care. That amount is exactly the difference between the stipulated total medical bills and the amount paid by the City. The jury's intent was clear—to compensate Smith for the medical expenses that were not paid by the City. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1401–02 (7th Cir. 1997) (upholding verdict because the jury's intent was clear).

There is thus no sound reason to reduce the jury's verdict by the amount requested. The City paid $150,666.61 in medical expenses for Smith and the jury clearly deducted that amount from the medical care verdict. The City will not be paying twice for these expenses as those paid bills were never meant to be a part of the verdict. For that same reason, Smith is not receiving a double recovery. The Court declines to reduce the medical costs verdict by $150,666.61.

### B. Request to Set-Off $264,330.15 from the Medical Care Award

The City also seeks set-off of the entire medical costs verdict—$264,330.15—on the theory that the $150,666.61 paid by the City represents payment in full for these expenses and that because those expenses have already been paid, Smith is receiving a windfall. Smith argues that under Illinois law he is entitled to seek, and then receive an award of, the full medical bills.

Smith was never charged for and never paid any of the medical bills referred to in the stipulation read to the jury. Rather, the City is obligated to pay all reasonable and necessary medical expenses for its police officers who are injured on duty for as long as the officer accrues such bills. *See* Chicago Municipal Code §§ 3-8-200 & 3-8-230 (2015). The City covered Smith's medical expenses pursuant to that obligation and the "Injury On Duty" ("IOD") report he submitted. For such injury-on-duty reimbursement, the City's Committee on Finance uses a third-party vendor, Coventry, to review, approve, and then adjust the bill per its fee schedule or

4

agreement with the providers. This re-pricing of the bill means the City pays the medical provider an amount lower than the initial bill, but that discounted amount is nevertheless considered payment in full. Thus for Smith's total medical bills of $414,996.76 (at the time of trial), the City paid $150,666.61 and that resolved all the bills. The stipulation, however, suggested that Smith had unpaid medical expenses of $264,330.15, the amount the jury awarded him.

The City argues that the collateral source rule does not apply to limit its claimed set-off and that, as in the recent Illinois First District case *Segovia v. Romero*, this Court should allow the City to set-off the entire jury award for medical expenses because the City "paid" that amount with the $150,666.61 payment. *See* 8 N.E.3d 581, 2014 IL App (1st) 122392, 380 Ill. Dec. 411 (2014). *Segovia* is directly on point and Smith's response brief does not address it. As explained in *Segovia*, the collateral source rule has both evidentiary and substantive aspects, operating as a rule of evidence to prevent the jury from hearing about collateral benefits that a plaintiff may have received that lessened his damages (for example, his own insurance payments), so that the jury does not take that information into account when determining the tortfeasor's liability. *Id.* at 586. The collateral source rule is also a substantive rule of damages that "protects collateral payments made to or benefits conferred on the plaintiff *by denying the defendant any corresponding offset or credit*." *Id.* (quoting *Wills v. Foster*, 892 N.E.2d 1018, 1033, 229 Ill. 2d 393, 323 Ill. Dec. 26 (2008)). In *Segovia*, the Illinois Appellate Court determined that payment by the defendant's insurer of $2,500.00 to settle a $5,000.00 subrogation claim by plaintiff's insurer for benefits fronted to the plaintiff was not a collateral source payment. *Id.* at 587. Rather, the insurer was a source "related to defendant through contract" that made a payment to the plaintiff's insurer on defendant's behalf and "will probably

5

have to pay for the final damages awarded against defendant." *Id.* The court concluded that, "[w]ithout setoff, defendant, through his insurer, will have to pay twice for the same medical expenses." *Id.* And most important for the City's argument here, the court awarded set-off in the entire amount of the benefits paid, despite the fact that the insurer only paid a reduced amount to settle the subrogation claim. *Id.* ("Accordingly, the court erred in denying defendant's motion for setoff of the amount American Heartland paid State Farm in settlement of plaintiff's medical expenses."); *id.* at 588 (awarding setoff of $5,000.00).

Smith counters that *Wills* and *Molzof v. United States*, 6 F.3d 461 (7th Cir. 1993) compel a different result. In *Wills*, the Illinois Supreme Court determined that a plaintiff may seek to recover the full billed amount, i.e. the "reasonable value," of medical expenses "provided that the plaintiff establishes the proper foundational requirements to show the bill's reasonableness." 892 N.E.2d at 1031. This is because the collateral source rule would be upended if a tortfeasor was obligated to pay only what was actually expended for the medical care, for instance if a plaintiff's bills were paid at a highly favorable rate by Medicaid, because that would make "the measure of the defendant's liability [] determined by the nature of the injured party's relationship with a source collateral to the tortfeasor." *Id.* at 1030. *Wills* does not speak to whether a defendant, having settled medical bills for a certain amount, may seek set-off for the total billed amount.

Similarly, *Molzof* is not directly applicable to this question and applies Wisconsin rather than Illinois law in the context of the Federal Tort Claims Act ("FTCA"). In that FTCA case, the district court determined that Wisconsin law would allow the recovery of future medical expenses, despite the fact that the plaintiff was a veteran entitled to free medical care from the government. 6 F.3d at 468. There the Seventh Circuit discussed the collateral source rule's

6

inapplicability when the double recovery comes from the same source but drew a distinction between recoveries that come from the same defendant versus the same source: "The source of the funds may be determined to be collateral or independent, even though the [tortfeasor] supplies such funds . . . . Application of the collateral source rules depends less upon the source of funds than upon the character of the benefits received." *Id.* at 465 (quoting *Haughon v. Blackships, Inc.*, 462 F.2d 788, 790 (5th Cir. 1972)). The Court then stated that to determine applicability of the collateral source rule, "courts have looked to the nature of the payment and the reason the payment is being made rather than simply looking at whether the defendant is paying twice." *Id.*

The Court then reviewed FTCA cases where the application of the collateral source rule to the federal government is analyzed as whether (1) the payment "comes from a specially funded source distinct from the unsegregated general revenues of the Federal Treasury" or "(2) if the plaintiff contributed to the government payments and, thus, was entitled to the payments irrespective of the damages award." *Id.* at 466. Therefore, courts have found the collateral source rule applicable to civil service retiree compensation, social security, and Medicare payments, but not veterans' medical benefits because they do not come from a specially funded source and the veterans do not contribute to those benefits. *Id*. The Seventh Circuit did decide, however, that the Wisconsin Supreme Court would deem such benefits to be collateral, based on a Wisconsin case finding that military medical benefits were not gratuitous, but analogous to traditional employee health benefits for which military service people trade their work. *Id.* at 467.

Smith briefly claims that he contributed to the policy of insurance and therefore should receive the benefit. Doc. 221 at 13. However, Smith's payments (or not) into the City's medical

7

insurance plan for policemen are not facts in evidence. Smith has not made any sound arguments that the source of the payments to indemnify Altman is different from the medical payments for officers injured on duty, or even that the payments for officers injured on duty is from the same source of funds as the payments for other medical expenses. The character of the benefits received by Smith from the medical care verdict is payment for the balance of his past medical expenses—the same benefit as the payments already made by the City on his behalf. Ultimately, though, Smith is using *Molzof* to argue for a reconsideration of the Court's prior collateral source finding, which the Court will not undertake at this late date. *Molzof* specifically examines Wisconsin law and is not applicable to a determination of what the Illinois courts would do. Most importantly, however, *Molzof* does not speak to whether the City can seek set-off of the entire amount of medical bills rather than the amount paid to settle those bills.

Therefore the Court finds that *Segovia* is directly on point and controls. The City is entitled to a set-off of the medical care verdict in the amount of $264,330.15 because its payment of $150,666.16 for Smith's medical bills was payment in full for the $414,996.76 in total medical billings. Therefore, to make the City pay this additional amount is to make it pay twice.

### C. Request to Subtract $83,384.62 From the Lost Wages Award

The City also asks that the Court subtract $82,126.78, plus a $1,257.84 retroactive paycheck that is pending, for a total of $83,384.62, from the lost wages award of $162,449.00 to account for the twelve-months salary already paid to Smith per the Police Department's obligations under the Chicago Municipal Code and the Collective Bargaining Agreement ("CBA") between the City and the Fraternal Order of Police. Smith opposes this reduction, arguing the jury already calculated this set-off by following the Parties' stipulation. The Court agrees.

The Parties' stipulation, as read to the jury, stated in relevant part:

The parties agree that the total amount of lost wages that Plaintiff has incurred from November 2, 2011 to the present time are $247,205.00, and that the City of Chicago has paid $84,756.00 for one year of those lost wages.

Doc. 165 at 5. The jury awarded Smith lost wages in the amount of $162,449.00—the difference between the stipulated total wages and the amount paid by the City. The jury clearly already accounted for the paid year of wages, the verdict has a reasonable basis, and the Court will not reduce it on this basis. *See Medcom*, 106 F.3d at 1402 (upholding jury verdict with reasonable basis in the evidence).

### III. The City's Subrogation Rights Against the Award & Request for Escrow

#### A. The City's Subrogation Rights

The City argues that, by operation of law and per Smith's own agreement, it is entitled to subrogation for the medical payments that it has made on Smith's behalf and for any future medical expenses. The City argues that Smith's medical expenses are on-going and that they expect to pay a total of $1,713,873.30 over the next 34 years for Smith's medical care.

The Chicago Municipal Code grants a right of subrogation to the City to recover medical expenses incurred by an officer injured on duty because of another's negligence. Chicago Municipal Code §§ 3-8-190 & 3-8-220; Pension Code § 22-306 (enabling municipalities to enact ordinances to pay for the medical expenses of officers injured in the line of duty and then to recover those expenses from the negligent person or corporation). Furthermore, pursuant to a City Council order, officers who receive payment of injury-on-duty medical expenses from negligent third parties must reimburse the City in full from any recovery they receive on account of that injury. Doc. 196 at 13. The Chicago Police Department has issued a General Order that mirrors this, requiring officers to reimburse the City for medical expenses paid on their behalf if

9

they receive a cash settlement from a responsible third party. Chicago Municipal Code Section 2-84-290 provides for additional penalties, beyond those imposed by law, for police department members who fail to obey the rules and regulations of the Department. Finally, the Injury on Duty Report that Smith submitted to report the incident that precipitated this lawsuit contains language whereby he agreed:

> in consideration of the payment by the City of Chicago of any medical and/or hospital expenses incurred as result of the above injuries, I will: . . . . reimburse the City of Chicago in full for any sums which it has or may expend on my behalf for said medical and/or hospital expenses from any recovery which I have or may effect from the person or party whom it is claimed is responsible for my injuries.

Doc. 196-2 at 7. The City initially cited to Appendix O of the CBA for this subrogation right, but now disavows this section as inapplicable to the issue at hand. Finally, the City has notified Smith of its right to recovery these expenses, in the form of a notice of lien. Doc. 196-2 at 2.

Smith challenges the City's ability to collect this money from him, on the basis that subrogation is a mechanism directed at the responsible third-party, not the insured, and the City's cited bases of its right to recoup the medical payments (including the General Order, the Municipal Code, and the IOD form signed by Smith) are inapplicable, unenforceable, or create only a right of subrogation that is not exercisable against Smith as the "insured."

The Illinois courts have upheld the subrogation right provided for in Municipal Code § 3-8-220 and Pension Code § 22-306. *See State Farm Mut. Auto. Ins. Co. v. Murphy*, 635 N.E.2d 533, 537, 263 Ill. App. 3d 100, 200 Ill. Dec. 194 (1994); *Sullivan v. Sudiak*, 333 N.E.2d 60, 64, 30 Ill. App. 3d 899 (1975). The Illinois Appellate Court has also upheld the City's use of this type of lien against police officers' recovery in lawsuits in order to recoup injury-on-duty medical expenses. *See Edwards v. City of Chicago*, 905 N.E.2d 897, 900–01, 389 Ill. App. 3d 350, 329 Ill. Dec. 59 (2009) (rejecting a challenge to the use of such liens). The *Edwards* court

10

noted the City's subrogation authority under the Municipal Code sections, then also described the City's "alternative method" whereas the medical expenses for an officer injured in the line of duty would be paid if that officer signs an agreement whereby he agrees to reimburse the City if he or she recovers damages from a third party. *Id.* at 901. That court explained,

> [n]othing in this substitute method of obtaining reimbursement for the City's payments of medical expenses, where the beneficiary obtains compensation from a third party, violates the City's ordinance provisions authorizing direct action by the City against the third party.

*Id.*

It is clear that under Illinois law, the City has the ability to enforce its lien against Smith to recoup medical expenses from the recovery. Altman is the liable third-party in this scenario and the City has a right to enforce its otherwise valid lien. The added wrinkle here is that the City is the one paying the judgment. This may be circular, but Smith does not present any good reason to invalidate the lien or disallow this recoupment mechanism. Smith first attacks the IOD report as somehow making a unilateral change to the CBA without proper negotiation and containing false information by stating the medical bills paid are in exchange for the agreement to repay from any judgment. The CBA is irrelevant because the injury on duty medical payments obligation (and the City's ability to recover) do not arise out of the CBA, but rather through the operation of law and contract. Smith also argues the IOD form refers to recovery from a third party, not the City itself; however, the language of the agreement is actually "from any recovery which I have or may effect from the person or party whom it is claimed is responsible for my injuries." Doc. 196-2 at 7. Smith's recovery is from Altman as the negligent third party. That Altman is then indemnified by the City has no effect on the IOD language, just as a recovery from any other negligent person who held an insurance policy would still be considered a third party recovery under the IOD. Nothing in the language of the IOD precludes

the City from seeking to recover paid medical expenses from this judgment. Smith finally argues that the IOD is ambiguous as to what "person or party" means and therefore should be construed against the City. The Court finds the IOD's language in this regard to be plain and not in need of further amplification. Because the Illinois courts have upheld the IOD forms and lien mechanism, the Court sees no good reason to invalid either here. *See Edwards*, 905 N.E.2d at 900 (noting that the City Counsel order allowing such agreements dates back to at least 1974).

B.     **Future Medical Expenses & Escrow Request**

With the City's requested set-off from the medical care verdict, it has received recoupment of Smith's medical expenses through the date of the judgment. That aspect of its subrogation request is therefore moot. But the City also asks the Court, under its equitable powers, to set aside in an escrow account the balance of Smith's verdict so that it can collect on future medical expenses. This is a very unusual request. During the evidentiary hearing, the City's Executive Director of the Claims Division of the Committee on Finance testified that the lien recoveries often do not cover even existing medical expenses, therefore the City's pursuit of liens for future medical expenses was rare—she knew of one current claim involving future workers compensation payments. Doc. 196-16 at 7–8.

Whether the City seeks these future medical expenses under the subrogation theory or per the IOD agreement, it has the problem that these future expenses have not yet been incurred, are not certain, and are therefore not currently ripe for recoupment. The terms of the IOD specify that Smith will "reimburse" the City for medical bills paid—the implication being that those are previously paid amounts certain. The City has not pointed to any authority that would persuade the Court to find otherwise. Similarly, under Illinois law and traditional principals of subrogation law, the subrogor's recovery is limited to those amounts actually paid. *See Am.*

*Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 936 (7th Cir. 2003) ("[T]here is a limitation on the rights of a subrogee that must be taken into account: The right of subrogation is generally one of indemnification; consequently, a subrogee is entitled to indemnity to the extent only of the money actually paid by him to discharge the obligation . . . ." (internal quotation marks omitted)); *Standard Accident Ins. Co. v. Lohman*, 295 F.2d 261, 264 (7th Cir. 1961) ("[A]n elementary principle of subrogation [is] that the right does not exist until the surety has actually paid the debt."). The City also argues that Smith will be unjustly enriched if allowed to keep the verdict amounts "unencumbered in any way whatsoever," but of course that recovery is subject to the City's valid subrogation rights and lien. The City can seek to recover its future expenses in the normal course;[1] however, the Court will not place the balance of Smith's verdict into escrow in order to ensure payment on uncertain and unknown future medical bills.

### C. Attorneys' Fees & Costs

The City also asks the Court to set aside the attorneys' fees and costs award in escrow so that it may recoup Smith's future medical expenditures. These fees are statutory and separate from Smith's compensatory damages award. *See* 42 U.S.C. § 1988(b). Neither party has briefed the host of thorny issues that this request provokes, including preemption and the special role of attorneys' fees in civil rights cases. The Court has already refused to create an escrow for the City's future medical expenses and therefore need not separately designate Smith's attorneys' fees and costs as a part of that.

---

[1]The City notes that, as of the filing of the motion in January 2015, the amount paid for Smith's medical expenses had increased by an additional $8,958.99. The Court has considered the medical care expenses through the entry of judgment. The City is free to seek post-judgment and all other future medical expenses through whatever recovery mechanisms it usually employs in the state courts.

## CONCLUSION

For the foregoing reasons, the City's motion for set-off [196] is granted in part and denied in part. The City is entitled to a set-off of the medical care award in the amount of $264,330.15.[2] The motion is otherwise denied.

Dated: September 21, 2015

SARA L. ELLIS
United States District Judge

---

[2] In response to the City's Motion for New Trial or, in the Alternative, for Remittitur [186] and by Opinion and Order to be issued concurrently, the Court remits the compensatory damages award by $670,000.00. If Smith accepts the remittitur, an amended judgment in the amount of $392,449.00 will issue. If Smith elects a new trial on damages, the Court will revisit the set-off issue after that trial.