# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH P. SMITH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 4546 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| CAPTAIN MARK ALTMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED OPINION AND ORDER

After a trial in October 2014, the jury returned a verdict in favor of Plaintiff Joseph P.

Smith and against Defendant Captain Mark Altman on Smith's claim of excessive force under 42

U.S.C. § 1983. Judgment was entered for Smith on October 29, 2014. On November 25, 2014,

Smith filed a Bill of Costs, seeking $29,721.18 in costs, with that amount mainly comprised of

printing, transcript, and expert witness fees. On February 27, 2015, Smith filed a Petition for

Attorneys' Fees and Costs, requesting $581,250.00 in attorneys' fees for pre-trial and trial work,

and an additional amount of fees and costs for post-trial work [225]. Altman and the City of

Chicago ("Defendants") filed objections to Smith's Petition on March 20, 2015, arguing that the

total requested fees and costs should be reduced to $332,314.20. Defendants also moved to

strike certain exhibits to Smith's reply in support of his Petition [245], which is granted. For the

reasons set forth below, the Court awards Smith $467,182.10 in attorneys' fees and $12,651.93

in costs.[1]

---

[1] This Amended Opinion corrects a typo in the expert witness fees amount that was also reflected in the total amount of attorneys' fees awarded in the Court's Opinion and Order issued July 15, 2015, Doc. 266.

**LEGAL STANDARD**

The Court may, in its discretion, award reasonable attorneys' fees as part of the costs to a prevailing party in a 42 U.S.C. § 1983 action. 42 U.S.C. § 1988(b). Expert witness fees may be included, at the Court's discretion, in the award of attorneys' fees. *Id.* § 1988(c). In deciding a reasonable award of attorneys' fees, the Court begins by calculating the lodestar amount. *Johnson v. GDF, Inc.*, 668 F.3d 927, 929–30 (7th Cir. 2012). The lodestar amount is calculated by multiplying the hours reasonably expended by the plaintiff's attorneys by their reasonable hourly rates. *Id.* The Court may then adjust the lodestar amount depending on a variety of factors, including the degree of success, the novelty and difficulty of the issues, awards in similar cases, and the relationship between the lodestar amount and the damages awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Moriarty v. Svec*, 233 F.3d 955, 967–68 (7th Cir. 2000). "A plaintiff who achieves 'excellent results' should receive the entire lodestar, but where 'a plaintiff has achieved only partial or limited success,' the lodestar 'may be an excessive amount.'" *Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014) (quoting *Hensley*, 461 U.S. at 435–36).

Federal Rule of Civil Procedure 54(d) states that unless a federal statute, the Federal Rules, or the Court provide otherwise, costs should be allowed to the prevailing party. Pursuant to 28 U.S.C. § 1920, the Court may tax as costs certain fees, including fees for service of summons and subpoenas, fees for "transcripts necessarily obtained for use in the case," and fees for "exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." The prevailing party is presumptively entitled to costs. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). The prevailing party maintains the burden of establishing that the potentially recoverable costs incurred were

reasonable and necessary. *Trs. of Chi. Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). If that burden is satisfied, the losing party bears the burden of showing that the costs are inappropriate. *Beamon,* 411 F.3d at 864. The Court enjoys "wide discretion in determining and awarding reasonable costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 642 (7th Cir. 1991).

## ANALYSIS

I. **Attorneys' Fees**

A. **Defendants' Motion to Strike Certain Exhibits Attached to Smith's Reply**

As an initial matter, Defendants move to strike Exhibits D and I attached to Smith's Reply to Defendants' Response to Plaintiff's Petition for Attorneys' Fees and Costs [244]. Because Smith's reply attaches evidence to which Defendants have not had an opportunity to respond and was not tendered during the Local Rule 54.3 process, that Motion is granted.

Smith filed his initial reply on March 27, 2015, along with a Motion for Leave to File Brief in Excess of Fifteen Pages because his reply was thirty-one pages long [240, 242]. That request was granted, but the Court limited the reply to twenty-five pages. Exhibit I of the initial reply consisted of two affidavits. Smith then filed his shortened reply on April 1, 2015 [244], and with that filing added an additional affidavit to Exhibit I. Exhibit D is titled "Revenue Detail Report from Adult & Pediatric Orthopedics SC for the Service Dates 01/01/2011–03/25/2015." Amended Exhibit I is comprised of three affidavits from Mr. Horwitz's clients, each of whom states: "I have paid Mr. Horwitz for representing me [/my son] in this matter. His billing rate was $500 per hour." Doc. 244-1.

Altman argues that Smith did not tender these documents during the Local Rule 54.3 meet and confer process and did not provide them before filing the reply and amended reply, and

therefore, the Court should strike them. This district's rules require that the party moving for fees shall, if requested, provide the time and work records on which the motion will be based and provide representative business records to support their claimed hourly rates, in order to streamline the attorneys' fee process before the Court. N.D. Ill. L. R. 54.3(d). Smith's response to the motion offers no explanation why these documents were not produced to Altman per the Local Rules. *See* Doc. 254.

Similarly, Smith offers no excuse why these documents were included in the second reply but not attached to his initial submission of March 27, 2014.[2] Exhibit D is captioned a Revenue Detail Report with service dates of January 1, 2011 through March 25, 2015, but the last itemized entry is dated October 10, 2014. Doc. 242-4. The documents attached as Exhibit I were signed on March 26, 2015 (the day before Smith filed his original reply) and March 27, 2015 (the day he filed the original reply).

Smith argues that his reply does not raise any new arguments or new facts and therefore this late evidence should be considered. However, the billing records contained in Exhibit D and the client attestations in Exhibit I are new facts that Smith wishes the Court to consider when determining hourly rates and allowable costs. New arguments, facts, and exhibits offered in a party's reply do not allow the other side a fair opportunity to respond and therefore the Court must disregard them. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1295 n.7 (7th Cir. 1989) (refusing to consider argument made first in reply); *Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989) ("It is well-settled that new arguments cannot be made in reply. This goes for new facts too." (citation omitted)); *Louisma v Automated Fin., LLC*, No. 11 CV

---

[2] Smith includes a footnote in his second reply brief stating that Exhibit I had been supplemented with an additional affidavit from Mr. Marquez and that Mr. Marquez sent his affidavit to Mr. Horwitz on March 30, 2015. Doc. 244 p. 17 n.2. This does not explain why Smith had not secured this affidavit during the almost five months between the entry of judgment at trial and the filing of his fee petition.

2104, 2011 WL 5105377, at *3 n.1 (N.D. Ill, Oct. 27, 2011) ("This practice of raising arguments and offering exhibits for the first time in a reply brief must be avoided so as to provide the non-moving party a fair opportunity to file a comprehensive response.").  Smith cites an unpublished Southern District of Illinois case to argue the new affidavits may be considered, but in that case the magistrate judge denied that motion to strike while specifically noting that the other party would have a chance to object to the newly attached evidence after the Report and Recommendation was filed.  *See United States ex rel. Liotine v. CDW-Gov't, Inc.*, No. 3:05-cv-00033-DRH-PMF, 2013 WL 2156567, at *1 n.2 (S.D. Ill. May 17, 2013).  No such opportunity is available to Defendants here.

Exhibits D and I to Smith's Reply (Doc. 242-4 and Doc. 244-1) are stricken and will not be considered by the Court in its decision on Smith's Petition for Attorneys' Fees and Costs.

### B.     Calculating the Reasonable Hourly Rate

For pre-trial and trial work, Smith seeks $581,250.00 in attorneys' fees, as follows:

| Attorneys & Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Blake Horwitz | 290.65 | $500.00 | $145,325.00 |
| Uma Bansal | 870.10 | $350.00 | $304,535.00 |
| Amanda Yarusso | 194.80 | $400.00 | $77,920.00 |
| Jonathan Levy | 145.45 | $200.00 | $29,090.00 |
| Jeff Grossich | 109.80 | $100.00 | $10,980.00 |
| Sergio Moreno | 134.00 | $100.00 | $13,400.00 |
| **Total** | **1744.80** | | **$581.250.00** |

An attorney's reasonable hourly rate is "derived from the market rate for the services rendered."  *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting

*Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). The Court will "presume that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Id.* "The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Montanez*, 755 F.3d at 553. Smith bears the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Pickett*, 664 F.3d at 640 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). If Smith does not meet his initial burden, the Court may make its own determination of a reasonable rate. *Id.* If Smith meets his burden, the burden then shifts to Defendants to offer evidence to show "a good reason why a lower rate is essential." *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996)). Once the Court has determined the lodestar amount, it may adjust that amount based on factors "not subsumed by the lodestar calculation." *Id.*

### 1. Blake Horwitz

Mr. Horwitz requests a fee of $500.00 an hour, citing his experience and success in civil rights litigation. Mr. Horwitz supports this rate by citing to: itemized billing records from state and federal cases from 2013–2015 (Doc. 262); his own affidavit stating that he currently bills clients at $500.00 an hour and was awarded $400 an hour in 2006 and 2008 and $425.00 an hour in 2012, 2013, and 2014 (Doc. 225-1 at 27–28); the affidavits of two civil rights litigators attesting to the reasonableness of the requested rate (Doc. 225-1 at 31, 34); and the fees award by Judge Shah in *Ferguson v. George*, No. 13 C 6609, Doc. 84 (N.D. Ill. Nov. 17, 2014). Defendants respond that Mr. Horwitz's awarded rate should be $425.00 per hour.

Considering the affidavits first, Mr. Horwitz's statement standing alone is not enough to establish the market rate. *See Harper v. City of Chi. Heights*, 223 F.3d 593, 604 (7th Cir. 2000) ("[A]n attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services . . . ."). Similarly, Mr. Lipschultz and Mr. Kulis' affidavits, to the extent that they state that Mr. Horwitz's requested rate is reasonable, are of little help to the Court, because affidavits that "merely opine" on another attorney's market rate rather than "provide evidence as to what the comparable attorneys charge for similar services" have little probative value. *Pickett*, 664 F.3d at 647. However, these affidavits, particularly Mr. Kulis', show what attorneys with comparable civil rights experience charge for similar cases. Mr. Horwitz has been practicing law for twenty-seven years and has specialized in civil rights litigation for twenty-four years. Mr. Lipschultz bills $335.00 per hour for civil rights cases after fourteen years of practice. Mr. Kulis has been practicing law seven years longer than Mr. Horwitz and had a $475.00 per hour rate approved in 2011. These affidavits point to a market rate between $335.00 and $475.00 per hour for civil rights litigators with between fourteen and thirty-four years' experience.

Mr. Horwitz also relies on the Laffey Matrix, adjusted upward for the Chicago market, to justify his requested $500.00 rate. The Seventh Circuit has "expressed some skepticism about applying the Laffey Matrix outside Washington, D.C." and leaves it to the trial court's discretion whether the matrix is useful for a particular case. *Montanez*, 755 F.3d at 554. The adjusted Laffey Matrix rates for attorneys with eleven to nineteen years' experience ($478.00/hour) and twenty-plus years' experience ($541.00/hour) are well above the rates established by the affidavits submitted by Mr. Horwitz ($335.00/hour for fourteen years' experience and $475.00/hour for thirty-four years' experience). The Court, already hesitant to use as a comparator something for which the Seventh Circuit has expressed skepticism, finds that the

Matrix is not a useful measure where it is so out of sync with the market rate shown in the third-party affidavits. *See Pickett*, 664 F.3d at 640 (calling third-party affidavits "that attest to the billing rates of comparable attorneys" the "next best evidence" of an attorney's market rate when the attorney uses contingent fee agreements and the hourly rate cannot be easily determined).

Mr. Horwitz also attaches billing records from several cases, including state criminal cases, state tort cases, one federal civil rights case, and one matter that involved both a federal civil rights case (that had proceeded to the amended complaint stage) and a state tort case. Doc. 262. Defendants object to these bills as unsubstantiated and not proof that Mr. Horwitz charged his clients the amounts listed or that his clients actually paid that amount. Defendants also complain that one-third of the billing records were not produced during the meet and confer process. Defendants do not identify which specific records were not disclosed and do not move to strike any particular parts of this exhibit, therefore the Court will consider the billing records.

The Seventh Circuit has directed district courts to "presume that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate," however the applicant bears the burden to produce satisfactory evidence to show the requested rate is in line with prevailing market rates. *Pickett*, 664 F.3d at 640. Of the six bills submitted by Mr. Horwitz in support of his requested $500.00/hour rate, only two of the matters are federal civil rights cases, and of those, one is a bill that blends a false arrest claim filed in state court and a civil rights claim filed in federal court. The closest comparator to this case is the federal civil rights case that has progressed to the second amended complaint stage. That case has involved discovery, including discovery motion practice, investigation, response to a motion to dismiss, hearing attendance, client communication, communication with opposing counsel, drafting an answer to a counterclaim, and drafting of pleadings. In that case, on-going for almost two years, Mr.

Horwitz claims approximately 20 hours of work. It well may be that Mr. Horwitz would bill an additional approximately 270 hours of work to take that matter to trial, bringing this case in line with the almost 291 hours he claims for this case. With this bill, Mr. Horwitz has shown some evidence that his market rate for similar litigation is $500 per hour and with the collection of bills, he has shown that he has billed $500.00 per hour for his recent state and federal work.

However, Mr. Horwitz has not convinced the Court that $500.00 per hour is in line with market rates for federal civil rights litigation. *See id.* Mr. Horwitz's own affidavit attests that he has been awarded $400.00 per hour in 2006 and 2008, and $425.00 per hour in 2012, 2013, and 2014. The last award of $425 per hour was in November 2014 by Judge Shah in the *Ferguson* case, a § 1983 case that Mr. Horwitz uses to argue that because an attorney with nine years' experience was awarded $400.00 per hour, and although he himself was awarded only $425.00 per hour in that case, he should receive $500.00 per hour in this case. The Seventh Circuit has explained that "rates awarded in similar cases are clearly evidence of an attorney's market rate." *People Who Care*, 90 F.3d at 1312. That Mr. Horwitz was awarded $425.00 per hour in a civil rights case less than one year ago is strong evidence of his market rate. Indeed, that rate was for work done in 2013, and a significant amount of the work in this case was also performed in 2013. It would not be appropriate for this Court to award Mr. Horwitz a higher rate for similar work done in the same year. This rate has also been recently approved for Mr. Horwitz by other courts in this district. *See Bronzino v. Sheldon*, No. 09 C 1048, 2013 WL 1667911, at *3 (N.D. Ill. Apr. 17, 2013) ($425.00/hour requested) and *Smith v. City of Chicago*, No. 09 CV 4754, Doc. 229 (N.D. Ill. Jan. 12, 2012) ($425.00/hour requested). Likewise, the third-party attorney affidavits from other practitioners, as discussed above, point to a market rate of between $335.00 per hour and $475.00 per hour for civil rights litigators with between fourteen and thirty-four

years' experience.  Mr. Kulis had a rate of $475.00 approved by another Northern District court in 2011, but he also has an additional decade of civil rights practice experience.  Although Mr. Lipschultz attests that his rate of $335.00 per hour was approved by a Northern District of Illinois court "several years ago and is likely higher today," Doc. 225-1, p. 32 ¶ 11, that does not require a bump in Mr. Horwitz's rate by $75.00 per hour when his rate was so recently approved at $425.00 per hour.

The Court agrees with Defendants that Mr. Horwitz's market rate is shown to be $425.00 per hour.

### 2.    Uma Bansal

Ms. Bansal requests an hourly rate of $350.00 per hour.  In support of this rate, Ms. Bansal argues that she has eight years of experience, including bringing five cases to trial, and that she was the attorney who primarily prepared this case for trial.  She cites a 2012 $285.00 per hour award in a police misconduct matter in this district and requests an increase to $350.00 per hour, citing generally her experience since that time working on complex litigation.  In support she submits her own affidavit and the affidavit of Deidre Baumann, who attests that, having worked with Ms. Bansal, a rate of $350.00 per hour is fair and comparable to rates charged by similarly experienced civil rights attorneys.  Mr. Lipschultz's affidavit also states that Ms. Bansal's requested $350.00 per hour rate is reasonable.  Ms. Bansal's affidavit states that she bills her time at $350.00 in her own law practice and that the Horwitz Law Firm bills her time at $350.00 per hour.  Ms. Bansal has not submitted any bills or documentation to verify this amount.  She also cites the approved rate of $400.00 per hour in the *Ferguson* matter to another attorney with nine years' experience and the awards of $340.00 per hour to two attorneys with six years' experience in *Entertainment Software Association v. Blagojevich*, No. 05 C 4265,

2006 WL 3694851, at *2 (N.D. Ill. Aug. 9, 2006).  Again, Ms. Bansal's own attestations and those of other attorneys to the reasonableness of her requested rate, without more, are of limited use to the Court.  *See Harper*, 223 F.3d at 604; *Pickett*, 664 F.3d at 647.

Defendants argue that Ms. Bansal has only five years' experience in civil rights litigation, as her first years of practice were primarily in intellectual property law and as a litigation associate with an unspecified focus.  The Court does look to the market rate "for lawyers engaged in the type of litigation in which the fee is being sought."  *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996); *Jimenez v. City of Chicago*, No. 09 C 8081, 2012 WL 5512266, at *3 (N.D. Ill. Nov. 14, 2012) (looking to civil rights versus general litigation experience in determining fee rates).  Reviewing Ms. Bansal's affidavit, it appears that she has five years of civil rights experience.  As discussed above, the market rate as established by the affidavits submitted in support of Mr. Horwitz's requested rate is between $335.00 per hour and $475.00 per hour for civil rights litigators with between fourteen and thirty-four years' experience.  Ms. Bansal was recently awarded a rate of $285.00 per hour.  The Court finds this amount to be proportionally within the established market rate and reasonable for an attorney of her experience.  *See Golden v. World Sec. Agency, Inc.*, No. 10 CV 7673, 2014 WL 37829, at *3 (N.D. Ill. Jan. 6, 2014) (approving $250.00 per hour for attorney with five and a half years' experience); *Jimenez*, 2012 WL 5512266, at *3 (approving $275 per hour for attorney with four years civil rights litigation experience, plus two years litigation experience and a federal appellate clerkship).  Ms. Bansal's rate is set at $285.00 per hour.

### 3.     Amanda Yarusso

Ms. Yarusso requests an hourly rate of $400.00 per hour.  In support of this rate, she cites her eleven years of civil rights litigation experience, including her substantial trial experience

and participation as lead counsel in civil rights cases. Ms. Yarusso cites to the $400.00 per hour award in *Ferguson* to an attorney with nine years of civil rights litigation experience. She also cites her awarded rate of $350.00 per hour three years ago in *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 985 (N.D. Ill. 2012), and argues that her increased experience in the interim and greater level of participation in this case warrant a $50.00 per hour increase. She points to an award of $395.00 per hour as a reasonable rate for an attorney with nine years civil rights experience in *Gibson*. Ms. Yarusso also provides her own affidavit and supplemental affidavit attesting to her experience, the affidavit of Mr. Kosoglad (the attorney awarded the $400.00 per hour rate in *Ferguson*), and a declaration by Torreya Hamilton that attests that Ms. Yarusso's requested rate is reasonable and states her own hourly rates (either awarded or negotiated) as $425.00 per hour (in 2010, 2013, and 2014), $395.00 per hour (in 2011 & 2012), and $400.00 per hour (in 2013). Ms. Hamilton also states that she currently bills $435.00 per hour and has been practicing law for nineteen years (with seventeen of those years in civil rights litigation).

Ms. Hamilton's affidavit places her rates (ranging from $395.00 to $435.00 per hour) directly in line with the market rates of $335.00 for fourteen years' experience and $475.00 for someone with thirty-four years' experience as established above. The *Gibson* award to Ms. Yarusso of $350.00 is slightly above this benchmark considering she has eleven, rather than fourteen, years' experience. Mr. Kosoglad's award of $400.00 appears to be an outlier in terms of market rates and must have been an exceptionally litigated case.

Defendants argue for a rate of $350.00 per hour, based on the previously awarded or negotiated rate of that amount for similar trial participation by Ms. Yarusso. Defendants further argue that Ms. Yarusso has not established why a $50.00 per hour increase from that amount is

justified, that her experience is better compared to other attorneys in other fee award cases, and that a $50.00 increase is too high compared to the average 3% raise of the American worker.

Ms. Yarusso did an excellent job in court on this case.  The Court finds persuasive the 2012 award of her rate as $350.00 despite the fact that it is slightly above the market rates as presented with this Petition.  Ms. Yarusso's rate is set at $350.00 per hour.

### 4.     Jonathan Levy

Mr. Levy requests an hourly rate of $200.00 per hour.  He has been practicing for a little over a year (sixteen months), concentrating in § 1983 and employment discrimination.  In support, Mr. Levy presents his affidavit, attesting to his experience and that his work is billed at $200.00 per hour by the Horwitz Law Firm.  Multiple bills are attached to the fee petition reflecting this rate.   Defendants argue that a rate of $150.00 per hour is more appropriate considering Mr. Levy's lack of experience and limited role at trial.  The Court agrees that, although Mr. Levy's billing rate is presumptively reasonable, it does not reflect the market rate for attorneys of his experience level.  And Mr. Levy's attempt to compare himself to associates with many more years' experience is unavailing.  A rate of $150.00 per hour is reasonable.  *See Alcazar-Anselmo v. City of Chicago*, No. 07 C 5246, 2011 WL 3236024, at *8 (N.D. Ill. July 27, 2011) (approving $150.00 per hour rate for recent law school graduate).  Mr. Levy's rate is set at $150.00 per hour.

### 5.     Jeff Grossich & Sergio Moreno

Jeff Grossich, a law clerk, and Sergio Moreno, a paralegal, each request an hourly rate of $100.00 per hour.  Defendants do not contest these rates and the Court finds them to be reasonable.

**C.      Requested Hours for Pre-Trial & Trial Work**

Defendants challenge the reasonableness of certain requested hours.  To assist the Court in determining the lodestar amount, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433.  The Court must also exclude from its initial fee calculation hours that are not "reasonably expended." *Id.* at 434.  Hours that are "excessive, redundant, or otherwise unnecessary" should be cut.  *Id.*

**1.      Vagueness & Block Billing**

Defendants ask the Court to reduce Ms. Bansal's hours by 15 percent (130.5 hours) due to what they characterize as pervasive billing entries that are vague.  If a party claims hours that are vague or inadequately documented, the Court "may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage."  *Harper*, 223 F.3d at 605.

Smith's initial arguments that Defendants have waived these objections by requesting percentage deductions rather than specific objections to time entries and that Defendants did not comply with Local Rule 54.3 in supporting these requested reductions are rejected.  The parties have submitted the meet-and-confer documentation to the Court and the Court finds it adequate. Smith further argues in his Reply that Defendants failed to produce billing records as required by the Local Rules and therefore are in a weak position to argue that his attorneys' hours expended are unreasonable.  However, Defendants did provide billing information during the meet-and-confer process.  The other party's billed hours are not a necessary part of the fee petition, but rather a benchmark to allow the Court to consider reasonableness.  *See Delgado v. Mak*, No. 06

C 3757, 2009 WL 211862, at *5–6 (N.D. Ill. 2009) (considering plaintiff's requested hours despite failure of defendants to provide any billing records).

Smith further argues that the entries are not vague or can be understood from context. However, the Court finds that a small percentage of Ms. Bansal's entries are too vague to be evaluated. *See, e.g.* Doc. 225-1 at 71, 80 ("Discuss upcoming depositions with Blake (.2)" or "Discuss to Blake (.9)"). Therefore the Court finds a five percent reduction in Ms. Bansal's requested hours (43.51 hours) is warranted.

Defendants also request that the Court reduce Ms. Yarusso's time by 17.4 hours to account for instances of block billing. When time records do not show the time spent on individual tasks, the Court cannot determine whether the claimed time is reasonable. Therefore the Seventh Circuit has rejected block billing. *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 421 F. Supp. 2d 1117, 1119 (N.D. Ill. 2006) ("The Seventh Circuit has made it very clear that a fee applicant must show the time spent on specific tasks rather than simply the total time spent on a bundle of tasks."). Of the six block entries identified by Defendants, the Court finds that the 10/6/14 (4.5 hours), 10/15/14 (9.5 hours), 10/21/14 (5.8 hours), 10/22/14 (6.0 hours), and 10/24/14 (3.5 hours) entries are not sufficiently detailed to allow the Court to determine the reasonableness of the charged time (29.3 total hours). The Court may disallow hours or reduce the entire fee award by a percentage when an attorney does not sufficiently document his or her time. *See Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 986 (N.D. Ill. 2012). Therefore, the Court finds that it is reasonable to reduce Ms. Yarusso's hours by 14.65 hours (half of the 29.3 total block-billed hours).

### 2.    Attorneys Billing for Paralegal or Administrative Tasks

Defendants argue that 9.23 hours of Mr. Horwitz, 20.9 hours of Ms. Bansal, 4 hours of Ms. Yarusso, and 9.73 hours of Mr. Levy's billed time are paralegal tasks and should be billed at the rate of $100.00 per hour. The Court may not "award fees at attorneys' rates for work that does not require that level of skill." *O'Brien v. Panino's, Inc.*, No. 10 C 2991, 2011 WL 3610076, at *2 (N.D. Ill. Aug. 16, 2011) (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999)).

Smith argues that Mr. Horwitz's time spent during trial organizing exhibits was vital to the presentation and success of the case. The Court agrees that some trial exhibit organization on the part of the lead trial counsel is reasonable, but considers over six hours of such work to be excessive. Therefore the Court will allow two hours of this work at Mr. Horwitz's approved attorney rate. The pre-trial activities listed in Defendants' Response Exhibit 3, Table 3B for Mr. Horwitz are clerical or better suited to a paralegal billing rate. Therefore the Court will reduce Mr. Horwitz's hours by 7.23 hours. Those hours will be billed at $100.00 per hour.

Similarly, Smith argues that the approximately seven hours Ms. Bansal spent organizing and outlining medical records contributed to her direct examination of the Plaintiff. The Court finds that 14.4 of the challenged hours are for paralegal-level work, but the organization and outlining of medical records and calculation of bills (6.5 hours) should be billed at Ms. Bansal's awarded attorney rate. Therefore the Court will reduce Ms. Bansal's total hours by 14.4 hours and bill those at $100.00 per hour.

Smith argues that Ms. Yarusso's disputed 4 hours preparing itemized and updated statements of attorneys' fees is necessarily lawyer work, since it requires compiling detail and attributing time. The Court agrees, however four hours on this task is not reasonable. Therefore

the Court reduces this to 2.5 hours billed at Ms. Yarusso's awarded attorney rate. Similarly, the Court reduces Mr. Levy's claimed 271 minutes preparing his attorneys' fee statement to 2.5 hours to be billed at his awarded attorney rate and determines that the other contested tasks (totaling 5.22 hours) are better billed at a paralegal rate of $100.00 per hour.

Defendants also argue that Smith's attorneys and paralegal cannot bill for purely administrative tasks, and includes a table of contested fees. *See* Response, Ex. 3, Table 3C. Fees are not to be awarded for "clerical or secretarial tasks, which should be absorbed as overhead into the attorneys' billing rate." *Id.* The Court agrees that, for this reason Ms. Bansal's hours will be reduced by 3.1 hours, Mr. Levy's hours will be reduced by 1.45 hours, and Mr. Moreno's hours will be reduced by 34.2 hours.

### 3.    Lack of Diligence

Defendants ask the Court to reduce Mr. Horwitz's time by 17.07 hours and Ms. Bansal's time by 20.2 hours for time spent on Plaintiff's Motion to Extend Expert Discovery and Defendants' Motions to Quash Subpoenas, which Defendants characterize as needless expenses attributable to Smith's lack of diligence in meeting expert and fact discovery deadlines. The "touchstone" in determining whether an attorney's time is compensable, even if spent on an unsuccessful argument or motion, is whether that argument (or here motion) was "reasonable." *See Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998). The requested reductions are for discovery motions necessitated by Smith's counsel's own failure to meet the expert discovery cut-off, requiring an additional, last minute request to extend expert discovery and from the issuance of subpoenas long after fact discovery had closed. Both motions were resolved in Defendants' favor. The Court agrees that the work expended on these motions was not reasonable, as they were necessitated by counsel's own failure to meet clear, long-standing (and

already extended) court deadlines. The Court will reduce Mr. Horwitz's hours by 17.07 and Ms. Bansal's hours by 20.2.

### 4. Excessive, Duplicative, and Unnecessary Time Entries

As discussed above, fees should not be awarded for excessive, duplicative, and unnecessary charges. *Hensley*, 461 U.S. at 434. Defendants seek an 8% reduction in counsel's hours for duplicative billing for internal communications, which they estimate to be approximately 163 billed hours or 9.3% of the total hours billed. While communications among lawyers and staff are not presumptively unreasonable, this percentage of requested time is twice the percentage approved by the Seventh Circuit after a similar challenge. *See Tchemkou v. Mukasey*, 517 F.3d 506, 511–12 (7th Cir. 2008). Therefore, the Court finds these hours are inflated, primarily due to billing in increments .1 of an hour, or six minutes, for email review. *See Taylor v. Law Offices of Vincent Peter Cignarale, LLC*, No. 11 CV 4853, 2011 WL 6102020, at *2 (N.D. Ill. Dec. 5, 2011). The Court therefore finds that it is reasonable to reduce the total requested hours by 5% (1% for each of the attorneys overbilling these amounts). Mr. Horwitz's hours are reduced by 14.53 hours, Ms. Bansal's hours are reduced by 43.51 hours, Ms. Yarusso's hours are reduced by 9.74 hours, Mr. Levy's hours are reduced by 7.27 hours, Mr. Grossich's hours are reduced by 5.49 hours, and Mr. Moreno's hours are reduced by 6.7 hours.

### 5. Overstaffing

Defendants seek a 20% reduction of all hours requested due to Smith's alleged overstaffing of the case. Defendants argue that the participation of three lawyers, a law clerk, a paralegal, and then the addition of Ms. Yarusso to the trial team, was excessive for a straightforward single defendant, single plaintiff § 1983 case, especially considering that Defendant Altman was represented by two lawyers and a paralegal at trial. Smith argues that the

addition of Ms. Yarusso increased efficiency because trial tasks were clearly divided, she stepped into the lead attorney role when Mr. Horwitz was absent for witness preparation, and her billing rate is lower than that of Mr. Horwitz, decreasing fees. Smith further argues that the Court should look to whether duplicative work is billed rather than the number of attorneys.

A court must scrutinize fee requests for additional attorneys to ensure that their work is reasonable and fully justified. *See Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858–59 (7th Cir. 2009) ("Though efficiency can sometimes be increased through collaboration, overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees." (citations omitted)); *LaSalvia v. City of Evanston*, No. 10 C 3076, 2012 WL 2502703, at *2 (N.D. Ill. June 28, 2012) (reducing hours sought for attorney added to trial team).

The Court declines to reduce counsels' fees by 20% across-the-board because of the addition of Ms. Yarusso to the trial team. However, throughout the trial it was clear that the three attorneys at counsel table, plus the additional associate and law clerk sometimes in attendance, was overstaffing—as demonstrated by the multiple voices in almost every sidebar, no matter the witness or issue. After reviewing the billing records, the Court finds that some trial hours billed by multiple attorneys are duplicative and reduces the requested fees as follows: Mr. Horwitz's hours are reduced by 3.5 hours, Ms. Bansal's hours are reduced by 30.25 hours, Ms. Yarusso's hours are reduced by 33.55 hours, and Mr. Levy's hours are reduced by 2.75 hours.

### 6. Time Spent Reading Minute Orders

Defendants seek a reduction of .1 hours from Ms. Yarusso's time and 6.2 hours from Ms. Bansal's time for fees sought for reading this Court's minute orders. Defendants assert that the itemized bills submitted by Smith in support of the fee petition show that it is not the Horwitz

Law Firm's general practice to bill clients in tenths of an hour for such activity, and therefore this amount should not be awarded as fees. Smith argues that the time billed was the minimal allowed and review of Court orders is an important aspect of case work. The Court agrees review of orders is compensable; however, billing in six minute increments for the review of a single minute order is excessive. *See Taylor*, 2011 WL 6102020, at *2 (reducing by two-thirds fees billed in 0.1-hour increments requested for email review). This amount of time for a minimal task would not be passed along to the client. Therefore the Court will reduce Ms. Bansal's requested hours for this task by 3.1 hours.

### 7.    Excessive Time Spent on Basic Tasks

Defendants request that Mr. Levy's time for performing certain basic tasks be reduced by 30% (16.52 hours) because, as a first-year attorney, he billed more than was reasonable for these tasks and this time would not be passed along to a paying client. Smith argues that Mr. Levy's work was important to the case. The Court has reviewed the disputed time and agrees that a reduction for excessive time spent on basic tasks (including reading cases) is warranted. The Court reduces Mr. Levy's time by 16.52 hours.

Defendants also request that Mr. Grossich's time for performing basic legal research, writing, and reading was excessive and should be reduced by 50% (24.07 hours). Defendants also ask the Court to reduce Mr. Grossich's time by 25% (10.55 hours) for excess time spent reading and abstracting depositions. Smith counters that this case presented unique legal issues, necessitating in-depth research, and that using Mr. Grossich to complete the time-consuming task of abstracting depositions was an efficient use of resources. The Court agrees that this case presented novel and difficult legal issues; however, having reviewed the time identified by Defendants as excessive for legal research and memoranda writing, the Court agrees that some

reduction is warranted—over six hours of research for a four-page memorandum on designation of an expert as a witness, for example, is excessive. The Court will reduce these hours by one fourth. Mr. Grossich's time will be reduced by 12.04 hours. The Court also agrees that the time spent abstracting depositions is excessive and would not be passed along to a paying client. *See Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."). The Court reduces Mr. Grossich's time by an additional 10.55 hours.

     **D.    The Lodestar Amount for Pre-Trial & Trial Work**

     Therefore, for pre-trial and trial work, the Court calculates the lodestar amount as follows:

| Attorneys & Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Blake Horwitz | 248.32 | $425.00 | $105,536.00 |
| Uma Bansal | 712.03 | $285.00 | $202,928.55 |
| Amanda Yarusso | 135.36 | $350.00 | $47,376.00 |
| Jonathan Levy | 110.49 | $150.00 | $16,573.50 |
| Jeff Grossich | 81.72 | $100.00 | $8,172.00 |
| Sergio Moreno | 93.1 | $100.00 | $9,310.00 |
| Attorney hours billed at $100.00 paralegal rate | 26.85 | $100.00 | $2,685.00 |
| **Total** | **1364.37** | | **$409,631.05** |

     **E.    Post-Trial Motion Practice Attorneys' Fees**

     Smith requests the following additional hours for his attorneys' post-trial work:

| Attorneys & Paralegal | Hours |
|---|---|

| | |
|---|---|
| Blake Horwitz | 80.88 |
| Uma Bansal | 89.2 |
| Amanda Yarusso | 21.5 |
| Jonathan Levy | 68.45 |
| Jeff Grossich | 29.39 |
| Sergio Moreno | 14.55 |
| **Total** | **303.09** |

A prevailing plaintiff is entitled to compensation for preparation of the fee request and post-trial work. *See Kurowski v. Krajewski*, 848 F.2d 767, 777 (7th Cir. 1988). Defendants challenge several aspects of the requested hours. First, Defendant request a reduction of Ms. Yarusso's hours by 1.45, which is 50% of the 2.9 hours spent in communication with other attorneys on the team. The Court agrees that inter-attorney communications as 18% of the requested hours is excessive and appears to be mostly Ms. Yarusso and Ms. Bansal discussing the attorneys' fees briefing, which was extensive but not overly complex. *See Tchemkou*, 517 F.3d at 511–12 (rejecting request for internal communications totaling approximately 9% of total requested fee, approving equivalent of less than 5% of requested hours). The Court will reduce Ms. Yarusso's hours by 1.45.

Defendants also challenge certain tasks as properly billed at paralegal rates or improperly billed because they are non-compensable administrative tasks. The Court agrees that gathering and organizing exhibits, preparing timesheets, and filing petitions are best compensated at a paralegal rate of $100.00 per hour. The Court reduces Ms. Bansal's post-trial hours by 5.3 hours and will assess those hours at the $100.00 per hour paralegal rate. Also, ordering transcripts and

delivering courtesy copies are administrative tasks that are not appropriate fees. The Court reduces Mr. Moreno's post-trial hours by 1.92 hours.

Defendants also request a reduction in Mr. Levy's and Mr. Grossich's hours (22.1 hours and 9.47 hours, respectively) for excessive time spent on basic tasks. The Court does find five hours to read trial testimony, particularly by someone who observed portions of the trial, to be excessive. Similarly, 44.22 hours of research on post-trial issues, especially the nearly 20 hours of research on jury, new trial, and "trial issues," to be unreasonable. Similarly, the 14.48 hours researching subrogation, wages, and damages over the course of two days shows a lack of efficiency and likely would not have been billed to the client. Therefore, the Court will reduce Mr. Levy's hours by 22.1 hours. The Court likewise does not believe that a client of this civil rights law firm would be billed for over 8 hours of research by a clerk into typical jury verdicts on Illinois state claims for pain and suffering. Mr. Grossich's other research tasks, as listed in Doc. 238-6 at 3 (Table 5C) are excessive and will be reduced. Mr. Grossich's hours are reduced by 9.47 hours.

Defendants request the Court reduce Mr. Horwitz's time by 1.33 hours because the redactions on certain time entries make it impossible to determine the reasonableness of the time expended. The Court agrees that the entries on 12/1/14 (0.05 hours), 12/3/14 (0.32 hours), and 12/4/14 (0.28 hours) are completely or almost completely redacted and therefore unintelligible. The Court reduces Mr. Horwitz's hours by 0.65 hours.

Finally, Defendants request a 20% reduction in the post-trial billing hours for all attorneys and the paralegal due to overstaffing. Smith asserts that the post-trial tasks were divided among the attorneys, with Mr. Horwitz handling the substantive post-trial motions and Ms. Yarusso and Ms. Bansal working on the fees briefing. The Court agrees that it is excessive

to have Mr. Yarusso and Ms. Bansal both briefing the fees petition and therefore reduces Ms. Bansal's hours by 15% for that overlap (13.38 hours). Furthermore, four to five attorneys to research and draft the post-trial motions is excessive. Although the set-off motion presented unique questions of law, this should not require four attorneys' attention. Mr. Horwitz, Ms. Bansal, Mr. Levy and Mr. Grossich all billed time for research on the set-off motion. The Court will therefore reduce each of their time by 20% for this inefficiency. Mr. Horwitz's hours are reduced by 16 hours, Ms. Bansal's hours are reduced by 17.84 hours, Mr. Levy's hours are reduced by 13.69 hours, and Mr. Grossich's hours are reduced by 5.88 hours.

Therefore the lodestar for post-trial work is the following:

| Attorneys & Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Blake Horwitz | 63.35 | $425.00 | $26,923.75 |
| Uma Bansal | 52.68 | $285.00 | $15,013.80 |
| Amanda Yarusso | 20.05 | $350.00 | $7,017.50 |
| Jonathan Levy | 32.66 | $150.00 | $4,899.00 |
| Jeff Grossich | 14.04 | $100.00 | $1,404.00 |
| Sergio Moreno | 12.63 | $100.00 | $1,263.00 |
| Attorney hours billed at $100.00 paralegal rate | 5.3 | $100.00 | $530.00 |
| **Total** | **200.71** | | **$57,051.05** |

### F.  Adjustment of the Lodestar

Once the Court has determined the lodestar amount, it may then adjust that amount up or down in light of the plaintiff's "level of success." *Spegon*, 175 F.3d at 557 (quoting *Hensley*, 461 U.S. at 436). Defendants ask the Court to reduce the lodestar, arguing that the hours

requested are, as a whole, unreasonable compared to defense counsel's hours—an approximate difference of 1000 additional hours by Smith's counsel, or 2.5 times the number of hours billed by Defendants' counsel. The Court rejects Defendants' request to reduce the lodestar based on a comparison of Smith's counsel's total hours to their own—although over a thousand hours is a large investment in a case, plaintiffs carry the burden of proof and therefore often expend more hours on a case than defendants. *See Delgado*, 2009 WL 211862, at *5 ("[M]any courts have remarked that usually a plaintiff, who has to carry the burden of proof, spends a great deal more time on litigation than a defendant." (alterations omitted) (internal quotation marks)). Smith asks the Court to increase the lodestar based on the large jury verdict in his favor. Defendants assert that an additional upward adjustment is not required because not all of the requested hours for the entire litigation are reasonable. The Court finds that the lodestar amount is appropriate to fully compensate Smith's counsel for an excellent result without any upward adjustment. *See Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified."). Although the trial resulted in a large jury award, this trial and the long litigation preceding it was not otherwise so exceptional so as to merit an upward adjustment.

## II.     Costs

Smith seeks $32,151.93 in costs for pre-trial, trial, and post-trial work. *See* Doc. 225-4 and Doc. 244 at 22.[3] Defendants challenge these amounts as inappropriate, excessive, or inadequately documented. As discussed above, the prevailing party is presumptively entitled to recoverable costs, but bears the burden of showing that those costs were reasonable and

---

[3] Note, there seems to be an addition error in Exhibit D. The total requested for pre-trial and trial work is $29,941.88, not the $29,721.18 listed. And Smith increases the total post-trial transcript fees sought (from $2,134.65 to $2,210.05) in his reply. Doc. 244.

necessary. *Beamon*, 411 F.3d at 864; *Chi. Plastering Inst. Pension Trust*, 570 F.3d at 906. Only the costs listed in 28 U.S.C. § 1920 are recoverable—these include fees of the clerk, fees for transcripts necessarily obtained for use in the case, and docket fees. 28 U.S.C. § 1920. Defendants specifically challenge the $19,500.00 requested for expert witnesses and $2,135.65 to court reporters post-trial. The Court will examine each category of claimed costs in turn.

### A.    Fees of the Clerk

Smith seeks $350.00 for fees to the clerk. The $350.00 docketing fee for the complaint is authorized by statute and therefore recoverable. *See* 28 U.S.C. § 1920(1).

### B.    Fees for Service of Summons and Subpoena

Smith seeks $65.57 for postage and delivery and $51.37 for "subpoena." In support Smith provides a transaction detail report from the Horwitz Law Firm indicating charges to Smith for these line items. Defendants have not contested these items and they seem to fall within the scope of 28 U.S.C. § 1920. *See Tchemkou*, 517 F.3d at 512–13 ("[T]his court has construed section 1920 to include amounts spent on filing fees, postage, telephone calls and delivery charges[.]"). The requested $116.94 for service of summons and subpoena is recoverable.

### C.    Transcripts

Smith seeks $8,695.86 in fees for transcripts for pre-trial and trial work and $2,135.65 in transcript fees for post-trial work. Defendants challenge the post-trial amount as without itemization, documentation, or proof of payment. Defendants do not otherwise challenge the transcripts. Section 1920(2) allows Defendants to recover fees for transcripts that were necessarily obtained for use in the case, but the recoverable cost is limited to the regular copy rate established by the Judicial Conference of the United States that was in effect at the time the

transcript or deposition was filed unless another rate was previously provided for by order of the Court. N.D. Ill. L.R. 54.1(b). The regular copy rate is $3.65 per page for an original transcript and $4.85 for an expedited transcript. See Maximum Transcript Rates, http://www.ilnd.uscourts. gov/home/clerksoffice/CLERKS_OFFICE/CrtReporter/trnscrpt.htm. Defendants do not challenge the $8,695.86 in fees for pre-trial and trial transcripts and those fees are allowed. As for the post-trial transcript costs, Smith argues that he did not receive an invoice from the court reporter until March 24, 2015 (after the February 27, 2015 Fee Petition and the initial Bill of Costs was filed on November 25, 2014). That $1981.20 invoice is dated March 4, 2015. The other invoices are dated before the Fee Petition was filed, but Defendants do not make any substantive argument that these otherwise allowable and supported (if somewhat late) costs should be denied. These post-trial transcript costs are awarded.

**D.    Fees and Disbursements for Printing; Docket Fees**

Defendants make no objection to the $1,114.48 requested by Smith in printing fees. These costs are allowed. Similarly, the $164.40 requested in docket fees is allowed.

**E.    Total Costs Awarded**

The Court therefore awards $12,651.93 in costs to Smith.

**F.    Court-Appointed Experts**

Defendants dispute the $19,500.00 in claimed costs for expert witnesses as not appropriate under 28 U.S.C. § 1920 and based on insufficient documentation. Defendants also dispute the $500.00 for Dr. Sweeney's rebuttal report, which was barred by the Court. Expert fees are recoverable as part of an award of attorneys' fees under 42 U.S.C. § 1988(c). This section does not require that the expert be court-appointed. *See Warfield v. City of Chicago*, 733

F. Supp. 2d 950, 955 (N.D. Ill. 2010). Smith seeks $11,700.00 for non-retained expert/treating physician Dr. Sweeney's trial testimony and $7,800.00 for Dr. Levin.

Dr. Sweeney testified at trial and prepared a rebuttal expert report. Whether or not that report was ultimately allowed, those fees are reasonable and sufficiently documented. Defendants challenge the "Health Insurance Claim Form" submitted in support of Dr. Sweeney's $11,200.00 fee for one day of trial testimony. Although it is an odd format, this is a bill of sorts and the Court will not disallow this cost on this basis. $11,700.00 is recoverable for Dr. Sweeney's testimony.

Defendants also challenge the documentation for Dr. Levin's fees. Smith includes a bill from Dr. Levin in the amount of $5,850.00 for his evidence deposition on October 10, 2014. That fee is reasonable and sufficiently documented. Smith also includes a check for $1,950.00 made out to Dr. Levin; however, Smith provides no explanation of this additional charge except that Dr. Levin charges $1,950.00 per hour. Without any explanation of the charged cost, the Court cannot determine whether this amount is reasonable and it will not be awarded.

Smith will be awarded $17,550.00 in fees for these expert witnesses.

## CONCLUSION

For the foregoing reasons, the Court grants Smith $467,182.10 in fees and $12,651.93 in costs. Defendants' motion to strike [245] is granted.

Dated: September 21, 2015

_____
SARA L. ELLIS
United States District Judge